## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PHYLLIS JONES | : |
| parent and next friend of A.J. | : |
| 2904 Naylor Road, S.E., Apt. #8150 | : |
| Washington, D.C.  20020 | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : |
| DISTRICT OF COLUMBIA | : |
| A Municipal Corporation | : |
| One Judiciary Square | : |
| 441 Fourth Street, N. W. | : |
| Washington, D.C. 20001 | : |
| | : |
| to serve: | : |
| | : |
| ADRIAN FENTY, Mayor | : |
| District of Columbia | : |
| 1350 Pennsylvania Avenue, N. W., 5th Fl. | : |
| Washington, D.C. 20002 | : |
| | : |
| PETER NICKELS | : |
| Attorney General | : |
| 1350 Pennsylvania Avenue, N. W., | : |
| Ste. 409 | : |
| Washington, D.C. 20004 | : |
| and | : |
| | : |
| MICHELLE RHEE (officially) | : |
| Chancellor, D.C. Public Schools | : |
| 825 North Capitol St., N. E., Suite 9026 | : |
| Washington, D.C. 20002 | : |
| | : |
| Defendants. | : |

## COMPLAINT FOR DECLARATORY JUDGMENT, INJUCTIVE AND OTHER RELIEF

Comes now the Plaintiffs, by and through their attorneys, Roxanne D. Neloms, Domiento

C.R. Hill, and the Law Offices of James E. Brown & Associates, P.L.L.C, and respectfully unto this

Honorable Court as follows that:

### JURISDICTION

1.  This Court has jurisdiction pursuant to the Individuals with Disabilities Education

    Improvement Act ("IDEIA"), 20 U.S.C Sections 1400-1461; 29 U.S.C. Sections 794;

    28 U.S.C. Section 1331 and 1343 and 5 D.C. Municipal Regs. Sections 3000.1 et seq.

1.  Declaratory relief is authorized by 28 U.S.C Sections 2201; 2202.

2.  Venue is proper in this Court pursuant to 28 U.S.C. Section 1391.

### PARTIES

3.  Parent Phyllis Jones, respectfully initiates this cause of action of behalf of her IDEIA

    eligible child, Ameir Jefferies (hereinafter referred to A.J.), respectively.

4.  A.J.'s birth year is 1997 and at all times relevant to the filing of this suit, resided in

    the District of Columbia.

5.  Defendant, the District of Columbia Government is a municipal corporation that

    receives federal funds pursuant to the Individuals with Disabilities Education

    Improvement Act ("IDEIA"), to ensure access to a free and appropriate education

    ("FAPE") and is obligated to comply with the applicable federal regulations and

    statutes including but not limited to the IDEA.

6.  Defendant, Michelle Rhee, being sued in her capacity as the Chancellor of the

    District of Columbia Public School System ("DCPS") which is the State Educational

Agency ("SEA"), charged with responsibility of ensuring that all disabled children in the District of Columbia receive access to a free and appropriate public education "FAPE" and to ensure them equal protection and due process of law.

## RELEVANT BACKGROUND

7.     The January 3, 2007 IEP developed by Kimball Elementary on A.J.'s behalf classified him as Learning Disabled and entitled him to 15.5 hours per week in specialized instruction and related services. *See Complaint Exhibit E.*

8.     A.J. underwent major surgery on his leg related to a serious accident in the first grade which resulted in a lengthy hospital stay and due to the seriousness of the accident A.J. became increasingly behind and he continued to miss a substantial amount of school because of several subsequent surgeries. *See Complaint Exhibit B.*

9.     In March 2007 A.J.'s family relocated to Virginia where he attended Triangle Elementary School in Prince William County, Virginia for part of the school year. *See Complaint Exhibits G-J.*

10.    In a January 2008 Teacher Narrative drafted by Heidi Milgrim, Special Education Teacher, and Aaron Sauter, Regular Education Teacher noted the following:

a.     [A.J.'s] had a total of fourteen (14) absences and seventeen (17) tardies this school year, attributed to Physical Therapy and surgery due to an injury that he incurred when he was younger.  These absences have has a negative impact on his education;

    b.    [A.J.'s] current instructional level in Language arts is at mid-first grade, making him three years behind; and

    c.    [A.J.] also showed marked delays in Written Language and Math. *See Complaint Exhibits G-J.*

11.    A December 2007 Educational assessment determined that:

    a.    [A.J.'s] achievement in **reading** was in the **very low range**. He demonstrated limited skills in work recognition, decoding skills, and comprehension skills. He was not able to read basic sight words and showed limited knowledge for basic letter patterns and had difficulty decoding regular patterned words;

    b.    [A.J.'s] achievement in **writing** was in the **very low range**. He was not able to produce a readable sentence to express his ideas. He demonstrated a limited writing vocabulary and demonstrated limited knowledge for basic spelling patterns; and

    c.    [A.J.'s] achievement in **math** was in the **very low range.** He was not able to do calculations for multiple digits. He did not demonstrate knowledge for basic multiplication or division facts. He did not know many of his facts automatically. He was able to solve one-step story problems for single digit numbers with limited content. *Id.*

12.    The November 2007 and January 2008 evaluations reported the following results:

| SCALE | COMPOSITE SCORE | PERCENTILE RANKING |
|---|---|---|
| Verbal Comprehension | 87 | 19 |
| Perceptual Reasoning | 79 | 8 |
| Working Memory | 83 | 13 |
| Processing Speed | 94 | 34 |
| Full Scale | 81 | 10 |

13. The January 10, 2008 Assessment Report Update drafted by Celeste M. Sharper, MSW, School Social Worker, noted, "academically, [A.J.] is reading at a kindergarten level." The report continued, reviewing his medical history reported, "[a]ccording to Mrs. Jeffries, [A.J.] broke his leg resulting [from] an accident while he was in first grade. He was thrown from a tractor-trailer and was out of school for a whole year." *Id.*

14. While Prince William County Public Schools completed re-evaluations, his family relocated back to the District of Columbia in March 2008. *Id.*

15. During that time the parent informed both the staff at Kimball and Winston that she intended to homeschool A.J. until the school assisted in determining an appropriate placement and subsequently registered A.J. at Winston as a home-school student. *See Complaint Exhibit A.*

16. On March 28, 2008, a letter was sent, via counsel, to Katie Jones, Principal, Winston Education Center, requesting a meeting to be scheduled as soon as possible to review evaluations, develop an IEP, and determine appropriate placement for A.J. *See Complaint Exhibit K.*

17. No response was received and no meeting has been convened so on April 22, 2008, the parent, through counse,l filed an administrative due process hearing request alleging that DCPS denied A.J. access to a free and appropriate education when it failed to convene a MDT meeting per parental request, failed to develop an IEP reasonably calculated to provide educational benefit, and failure to provide an appropriate education. *See Complaint Exhibit B.*

18. As relief, the parent sought a meeting to convene a MDT meeting to review the evaluations, develop an IEP and determine an appropriate placement, as well as other relief deemed appropriate. *Id.*

19. In a May 20, 2008 Hearing Officer's Determination, the hearing officer dismissed the parent's hearing request stating that the parent failed to meet her burden. *See Complaint Exhibit A.*

## FIRST CLAIM OF RELIEF

## IN THE DISTRICT OF COLUMBIA, HOME-SCHOOLED CHILDREN ARE ENTITLED TO SPECIAL EDUCATION SERVICES.

20. The parent re-alleges and incorporates by reference paragraphs 1-19.

21. In the case at bar, the parent sought to home school her child while she waited for DCPS to provide her with a meeting so that an appropriate placement could be determined for the school year.

22. The hearing officer dismissed the parent's claim noting that nothing in the IDEIA required the District of Columbia to offer a free and appropriate education to a student who was being unilaterally home-schooled.

23. In reliance of this position, the hearing officer pointed out that in accordance with 34 C.F.R. 300.2 (c)"each public agency in the State is responsible for ensuring that the rights and protections under Part B of the Act are given to children with Disabilities [who are] referred to or placed in private schools and facilities by that agency; or placed in private schools under provisions of section 300.148." *See 34 C.F.R. 300.2(c).*

24. In addition, he noted that the parent had not provided any evidence which supported the notion that A.J.'s home schooling was equivalent to a non-public day school.

25. The hearing officer erred in determining that A.J. was not entitled to special education services as a home schooled student because IDEIA provides that access to FAPE will be provided to those student who attend elementary or secondary private schools.

26. The federal government determined that the issue of whether a home-schooled child with disabilities were considered parentally-placed private school children with disabilities is a matter left for the State. *See 71 Fed. Reg 46,564(2006).*

27. The District of Columbia Public School System ensures that those children receiving "private instruction" in private elementary and secondary schools have access to a free and appropriate education.

28. Likewise, the District of Columbia Public Schools considers home-school instruction to be "private instruction" and thus those students who receive private instruction are entitled to a free and appropriate education under IDEIA.

29. The hearing officer's reference to non-public day schools was inapplicable in this matter as under IDEIA, non-public days schools are operate on a non-profit status and since home-schooling is synonymous with private instruction, A.J. is entitled to receive services pursuant to IDEIA. *See DC ST sections 38-202, 203 and 205.*

## SECOND CLAIM OF RELIEF

### THE HEARING OFFICER DISMISSAL OF A.J.'S CLAIM RESULTED IN A CONTINUOUS DENIAL OF FAPE

30. The parents re-allege and incorporate by reference paragraphs 1-29.

31. Because the hearing officer erroneously dismissed A.J.'s claim, the issues regarding the denial of FAPE were never addressed.

32. A free and appropriate education is defined as "special education and related services that are(a) provided at public expense, under public supervision and direction, and without charge; (b) meet the standards of the SEA,[. . . .]; (c)include an appropriate preschool, elementary, or secondary school education in the State involved; and(d) are provided in

conformity with an [(IEP)] that meets the requirements of sections 300.320 through 300.324." *See 34 CFR 300.17.*

33. Upon returning to the District of Columbia, the parent sought DCPS' assistance to determine an appropriate placement for providing services. In the interim, the parent informed DCPS of her intention to home-school A.J. until the she was notified of aan appropriate placement.

34. Parent's counsel sought a meeting with the neighborhood school so that she could provide information on her child and at no time prior or subsequent to the hearing did DCPS intervene.

35. The hearing officer erroneously determined that the access of a free and appropriate education did not extend to those children who are being home-schooled in the District of Columbia.

36. DCPS denied A.J. access to a free and appropriate education when it refused to meet with the parent upon parental request thereby resulting in A.J. not receiving services he may or may not have been entitled to receive.

**Wherefore**, the Plaintiffs pray that this Court:

1.    Reverse the hearing officers' determination which denied A.J. access to a free and appropriate education;

2.    Order DCPS to convene a MDT meeting to review all evaluations, revise his IEP as appropriate;

3.      Upon the submission of additional evidence, award A.J. compensatory

education services;

4.      Award Plaintiff's attorney fees and costs of this action;

5.      Award any other relief that the Court deems just and proper.

Respectfully submitted,

/s/

Roxanne D. Neloms  No. 478157

Domiento C.R. Hill No. MD 14793

James E. Brown & Associates, PLLC

1220 L. Street, NW, Suite 700

Washington, DC 20005

(202)742-2000 (Tele.)

**Counsels for Plaintiffs**

C8-1434
HHK

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| PHYLLIS JONES, parent and next friend of A.J., a minor | DISTRICT OF COLUMBIA, et. al |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF

11001

(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Roxanne Neloms, Esq.
Domiento C.R. Hill, Esq.
James E. Brown & Associates, PLLC
1220 L Street, NW Suite 700
Washington, DC 20005
(20) 742-2000

Case: 1:08-cv-01434
Assigned To : Kennedy, Henry H.
Assign. Date : 8/18/2008
Description: Admn Agency Review

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ⊙ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ○ A. Antitrust | ○ B. Personal Injury/ Malpractice | ⊙ C. Administrative Agency Review | ○ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act  IDEA<br><br>Social Security:<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>Other Statutes<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☒ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ E. General Civil (Other) | OR | ○ F. Pro Se General Civil |
|---|---|---|

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

3

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
20 USC 1400-1491 as amended Federal Question review of agency decision involving rights to Free Public Education

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  DEMAND $ _____ Check YES only if demanded in complaint  JURY DEMAND: YES ☐ NO ☒

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☑ If yes, please complete related case form.

DATE 8/18/08  SIGNATURE OF ATTORNEY OF RECORD  *Roxanne D. Neloms*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

# Exhibit A



# COSSE

DC Office of the
State Superintendent
of Education

# Office of Compliance & Review

### State Enforcement & Investigation Division
### Student Hearing Office

**Frederick E. Woods**, Esq., Due Process Hearing Officer
Van Ness Elementary School
1150 5th Street, S.E., 1st Floor
Washington, D.C. 20003
Facsimile: (202) 698-3825

2008 MAY 20 PM 6: 34

## *Confidential*

| | | |
|---|---|---|
| **In the Matter of** | ) | **IMPARTIAL** |
| | ) | **DUE PROCESS HEARING** |
| **Ameir Jeffries ("AJ")** | ) | |
| **Date of Birth**: 08/05/97 | ) | |
| Petitioner, | ) | **DECISION AND ORDER** |
| | ) | |
| vs. | ) | Hearing Request: April 22, 2008 |
| | ) | **Hearing Date: May 9, 2008** |
| **The District of Columbia Public Schools,** | ) | Held at: Van Ness Elementary School |
| **Home School: Winston Elementary School** | ) | 1150 5th Street, S.E., 1st Floor |
| **Attending: Home-School** | ) | Washington, D.C. 20003 |
| | ) | |
| Respondent. | ) | |
| | ) | |

| | |
|---|---|
| **Parent:** | **Phyllis Jones, Mother** |
| | **2904 Naylor Road, S.E., Apt. # 8150** |
| | **Washington, D.C. 20020** |
| | |
| **Counsel for the Parent/Student:** | **Nicole E. Mackin, Esq.** |
| | **James E. Brown & Associates, PLLC** |
| | **Attorneys at Law** |
| | **1220 L Street N.W., Suite 700** |
| | **Washington, D.C. 20005** |
| | |
| **District of Columbia Public Schools:** | **Laura George, Esq.** |
| | **Assistant Attorney General** |
| | **Office of the General Counsel, OSSE** |
| | **825 North Capitol Street, N.E., 9th Floor** |
| | **Washington, D.C. 20002** |

1

## I.    JURISDICTION

This Decision and Order is written pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, codified at 20 U.S.C. §§ 1400 -1482, 118 Stat. 2647; and its implementing regulations codified at 34 C.F.R. §§ 300.01 – 300.818; 5 D.C.M.R. §§ 3000 - 3033; and Section 327 of the D.C. Appropriations Act of 2005.

## II.    DUE PROCESS RIGHTS

The parent through counsel waived a formal reading of the due process rights.

## III.    FIVE-DAY DISCLOSURES

Petitioner:   Admitted, without objection, a disclosure letter filed on 05/02/08 that list five (5)-witnesses and attached ten exhibits sequentially labeled and tabbed AJ-01 through AJ-10. One (1)-witness was present and testified: (1) A.J.'s mother.

Respondent:  DCPS did not submit a five-day disclosure. No witnesses were present or called to testify. No exhibits were offered into evidence.

## IV.   STATEMENT OF THE CASE

A.J., born 08/05/97, age 10-years 9-months, may still be a student with a disability because he once received special education and related services, according to his expired 01/03/07 IEP, as a third grade, 48% out-of-general education, Specific Learning Disabled (SLD) student at Kimball Elementary School (Kimball ES) located in Washington, D.C. (R. at AJ-03.) According to A.J.'s mother, before his IEP expired he moved to the State of Virginia for a brief period. He moved back to the District of Columbia on or about March 27, 2008. And when he returned to D.C. she registered him at Winston ES as a home-schooled student. (R. at AJ-01.)

Parent's counsel Nicole E. Mackin alleged in the student's 04/22/08 Due Process Complaint (DPC) that DCPS violated the IDEIA and denied A.J. a Free Appropriate Public Education (FAPE) during the 2007-08 school year by doing one thing: (1) "failing to convene an IEPT Meeting upon the parent's [March 28, 2008] request." (R. at AJ-01.)

The OSSE Student Hearing Office scheduled the Due Process Hearing for, 1:00 p.m., Friday, May 9, 2008 at Van Ness Elementary School, 1150 5th Street, S.E., 1st Floor, Washington, D.C. 20003.

2

Assistant Attorney General Laura George appeared in-person for DCPS. Attorney Nicole E. Mackin appeared in-person representing A.J. who was not present; and his mother who was present.

## V.    PRELIMINARY MATTER

On May 7, 2008, DCPS counsel filed a Motion to Dismiss A.J.'s 04/22/08 Due Process Complaint on the grounds that there is no requirement for DCPS to provide a home-schooled student with a FAPE. On May 8, 2008 parent's counsel filed Parent's Opposition to DCPS' Motion to Dismiss. After a lengthy discussion for and against the Motion, DCPS counsel decided to withdraw the Motion as preliminary matter and instead to raise it again at the conclusion of the parent's case-in-chief.

That's because the IDEIA at 34 C.F.R. § 300.181 (h), Hearing Procedures, states that "[t]he Hearing Official or Hearing Panel may rule on motions or other issues at any stage of the proceedings." So the parent proceeded to present their case-in-chief. After the parent rested, DCPS counsel argued its Motion to Dismiss. After considering arguments for and against the Motion it was taken under advisement.

Based, however, on parent's evidence proffered at the hearing and the existing law, the parent presented no evidence as a matter of fact or law, that the IDEIA requires an LEA or SEA school district to provide a FAPE to a student whose parent unilaterally decided to home-school them. So DCPS' Motion to Dismiss is granted.

## VI.    SUMMARY OF THE EVIDENCE

The parent's five-day disclosure exhibits and the testimony of the one (1) and only witness the parties' presented are relied on in reaching this decision.

### One (1)-Witness for the Parent:

(1) A.J.'s mother.

### Three (3)-Exhibits:

1. AJ-01        The 04/22/08 Parent's Due Process Complaint

2. AJ-03        The 01/03/07 IEP

3. AJ-10        The 03/28/08 Parent Counsel's letter of DCPS Requesting an MDT Meeting

3

**Issue**

Did DCPS as the LEA violate the Individuals with Disabilities Education Improvement Act (IDEIA) codified at 20 U.S.C. §§ 1400 - 1482 and deny A.J. a Free Appropriate Public Education (FAPE) during the 2007-08 school year when it allegedly did one thing: (1) "failed to convene A.J.'s BLMDT/IEPT Meeting upon the parent's [March 28, 2008] request" when at the time of that request, the parent had informed the school district of their unilaterally decision to home-school their child? (R. at AJ-01.)

**Answer**

No. The parent did not present any evidence that the IDEIA requires DCPS to provide their home-schooled child with a FAPE.

## VII.  FINDINGS OF FACT

1.    A.J., born 08/05/97, age 10-years 9-months, may still be a student with a disability because he once received special education and related services, according to his expired 01/03/07 IEP, as a third grade, 48% out-of-general education, Specific Learning Disabled (SLD) student at Kimball Elementary School (Kimball ES) located in Washington, D.C. (R. at AJ-03.)

2.    According to A.J.'s mother, before his IEP expired he moved to the State of Virginia for a brief period. He moved back to the District of Columbia on or about March 27, 2008. When he returned to D.C. she registered him at Winston ES as a home-schooled student. But she does not plan to always home-school A.J. (R. at AJ-01; mother's testimony.)

3.    A.J.'s 04/22/08 DPC states in section A., Information About This Student, that "the present school of attendance is Home-Schooling." (R. at AJ-01.)

4.    On 03/28/08, parent's counsel sent a letter to the Winston Educational Center Principal requesting "an MDT Meeting as soon as possible." (R. at AJ-10.)

5.    The letter is silent about why a parent who unilaterally decided to home-school their child is entitled to a BLMDT/IEPT Meeting under the IDEIA. (R. at AJ-10.)

6.    Moreover, only twenty-five (25)-days after requesting the BLMDT Meeting, without any record evidence that parent's counsel followed up on their 03/28/08 letter to DCPS requesting the meeting, the parent filed A.J.'s 04/22/08 DPC. (R. at AJ-01.)

4

7.      The parent, however, did not present any evidence that the IDEIA
        requires a school district to provide their home-schooled child with a
        FAPE.

8.      So in the absence of evidence from the parent about why the school-
        district owes their home-schooled child a FAPE, DCPS' Motion to
        Dismiss is granted.

# VIII. DISCUSSION and CONCLUSIONS OF LAW:
## I
**DCPS is required to make a FAPE available to all children with disabilities
within the jurisdiction of the District of Columbia.**

The IDEIA codified at 20 U.S.C. §§ 1400 - 1482. and 5 D.C.M.R. § 3000.1
requires DCPS to fully evaluate every child suspected of having a disability within the
jurisdiction of the District of Columbia, ages 3 through 22, determine their eligibility for
special education and related services and, if eligible, provide them with special
education and related services through an appropriate IEP and Placement.

DCPS met its legal obligations under the IDEIA. Here is why.

1.  Pursuant to 34 C.F.R. § 300.2 (c): Private Schools and Facilities, "[e]ach
    public agency in the State is responsible for ensuring that the rights and
    protections under Part B of the Act [State Eligibility that includes FAPE
    Requirements] are given to children—(1) referred to or placed in private
    schools and facilities by the public agency; or (2) placed in private school by
    their parents under the provision of § 300.148."

2.  Pursuant to 5 D.C.M.R. § 3002.1, LEA Responsibility, "[t]he services
    provided to the child must address all of the child's identified special
    education and related services needs and must be based on the child's
    unique needs and not on the child's disability."

3.  Pursuant to 5 D.C.M.R. § 3013.1(e), Placement, "[t]he LEA shall ensure
    that the educational placement decision for a child with a disability is
    …based on the child's IEP."

4.  Pursuant to 5 D.C.M.R. § 3025, Procedural Safeguards—Prior Written
    Notice, DCPS shall provide written notice to the parent of a child with a
    disability before it proposes…an educational placement of the child.

5.  Pursuant to the IDEIA at 20 U.S.C. § 1414 (d) (A), (B); 34 C.F.R. § 300.323
    (a) Requirement that Program be in Effect—

5

> At the beginning of each school year, each local
> educational agency ... shall have in effect for each child
> with a disability in the agency's jurisdiction an IEP.

6.  Pursuant to Initial Evaluations at 34 C.F.R. § 300.301 (a): "Each public
    agency shall conduct a full and individual initial evaluation in accordance
    with § 300.305 and § 300.306 before the initial provisions of special
    education and related services [are provided] to a child with a disability
    under this part [Part B of the IDEA]."

7.  Pursuant to Initial Evaluations at 34 C.F.R. § 300.304 (c)(4): "Each public
    agency must ensure that ... (4) "the child is assessed in all areas related to
    the suspected disability, including, if appropriate ... [their] social and
    emotional status."

8.  Pursuant to Initial Evaluations at 34 C.F.R. § 300.304 (c)(6): "Each public
    agency must ensure that ... (6) "in evaluating each child with a disability
    under §§ 300.304 - 300.306, the evaluation is sufficiently comprehensive to
    identify all of the child's special education and related services needs,
    whether or not commonly linked to the disability category in which the child
    has been classified."

9.  Pursuant to 20 U.S.C. § 1414 (c)(1), "initial evaluation shall consist of
    procedures to determine whether a child is a child with a disability ...within
    60-days of receiving parental consent for the evaluation, or if the State
    establishes a timeframe within which the evaluation must be conducted,
    within such timeframe." The District of Columbia's established evaluation
    timeline codified at D.C. Code Ann. § 38-2051(a) is [within 120-days of
    receipt of the referral]. (Emphasis added)

10. To ensure that each eligible student receives a FAPE, the IDEIA requires
    that an IEP be developed to provide each disabled student with a plan for
    educational services tailored to that student's unique needs. See 20 U.S.C.
    § 1414 (d)(3).

11. Pursuant to 34 C.F.R. §§ 300.323(a), (c)(2), IEP Must be in Effect, each
    public agency must provide special education and related services to a child
    with a disability in accordance with the child's IEP.

12. Pursuant to 34 C.F.R. § 300.321(a)(1), IEP Team, "[t]he public agency must
    ensure that the IEP Team for each child with a disability includes the parents
    of the child...."

13. Those cited IDEIA obligations did not inure to the benefit of A.J. When
    A.J.'s mother registered A.J. at Winston ES on 03/28/08, A.J.'s
    01/03/07 IEP had already expired—it expired on 01/03/08. (R. at AJ-03.)

6

14. According to A.J.'s mother, before his IEP expired he had moved to the State of Virginia for a brief period, and he attended school in Virginia. He moved back to the District of Columbia on or about March 27, 2008. When he returned to D.C. she registered him at Winston ES as a home-schooled student. But she does not plan to always home-school A.J. (R. at AJ-01; mother's testimony.)

15. Furthermore, A.J.'s 04/22/08 DPC in section A., Information About This Student, states that "[A.J.'s] present school of attendance is Home-Schooling." (R. at AJ-01.)

16. Consequently, A.J. was not and is not at the time of the due process hearing enrolled in a DCPS public school or charter school; A.J. was not placed by the school district in a private or nonpublic school; and A.J. was not unilaterally parentally placed in a private or nonpublic school. And being unilaterally home-schooled at the parent's desire does not trigger the IDEIA FAPE requirements. Here is why.

17. Pursuant to 34 C.F.R. § 300.17(a) - (d), Free Appropriate Public Education, "or FAPE means special education and related services that—

   a. Are provided a public expense;

   b. Meet the standards of the SEA including the requirements of this part;

   c. Include an appropriate preschool, elementary school, or secondary school in the state involved; and

   d. Are provided in conformity with an IEP that meet the requirements of §§ 300.320 through 300.324."

18. And pursuant to the D.C. Code Ann. § 38-2561.01(7)(A), Definitions, "'[n]onpublic special education school or program' means a privately owned or operated preschool, educational organization, or program, no matter how titled, that maintain or conduct classes for the purpose of offering instruction, for a consideration, profit, or tuition, to students with disabilities."

19. Since A.J. is not enrolled in a DCPS public or charter school, then maybe his schooling could meet the definition of a nonpublic special education school or program. To the parent's chagrin, however, it does not.

20. That's because the parent provided no evidence whatsoever that A.J.'s home-schooling meets the definition of a nonpublic special education school or program as defined under the laws of the District of Columbia.

7

21. Ergo, without an IDEIA obligation to provide a child whose parents unilaterally decided to home school them with a FAPE, the parent's claim that DCPS denied A.J. a FAPE is without merit.

22. So, pursuant to 5 D.C.M.R. § 3030.3, "The burden of proof shall be the responsibility of the party seeking relief; either the parent/guardian of the child or the LEA. Based solely upon the evidence presented at the hearing, an impartial hearing officer shall determine whether the party seeking relief presented sufficient evidence to meet the burden of proof that the action and/or inaction or proposed placement is inadequate or adequate to provide the student a Free Appropriate Public Education (FAPE)."

23. The parent, who filed the hearing request, had and did not meet their burden of proof in this case because the parent:

   a. Failed to present any evidence about why the IDEIA requires DCPS to provide their home-schooled child with a FAPE.

So in consideration of the hearing record after considering arguments for and against DCPS' Motion to Dismiss, the Motion is granted and the hearing officer issues this—

# ORDER

1.    A.J.'s 04/22/08 Due Process Complaint is dismissed with prejudice.

2.    There is no finding that A.J. was denied a FAPE.

4.    This Order resolved all issues raised in A.J.'s 04/22/08 Due Process Complaint that is dismissed with prejudice.

5.    And the hearing officer made no additional findings.

**This is the FINAL ADMINISTRATIVE DECISION. An Appeal can be made to a court of competent jurisdiction within ninety (90)-days from the date of this Decision and Order pursuant to 20 U.S.C. § 1415 (i)(1)(A), (i)(2)(B); 34 C.F.R. § 300.516 (b).**

_____          _____
**Frederick E. Woods**                              **Date**
**Hearing Officer**

Issued: _____
**OSSE Student Hearing Office**

8

# OSSE
DC Office of the
State Superintendent
of Education

## Office of Compliance & Review

| In the Matter of | ) | |
| --- | --- | --- |
| | ) | |
| A.J. | ) | |
| Petitioner, | ) | **IMPARTIAL** |
| vs. | ) | **DUE PROCESS HEARING** |
| | ) | |
| The District of Columbia Public Schools, | ) | |
| Home-School Student | ) | |
| Respondent. | ) | |

The Individuals with Disabilities Education Improvement Act (IDEIA) 20 U.S.C.
§§ 1400 – 1482.

Case Information:    Hearing Request Date: April 22, 2008
**Hearing Date: May 9, 2008**
Held at:  Van Ness Elementary School
1150 5th Street, S.E., 1st Floor
Washington, D.C. 20003
SETS Case Number: _____
Student's Birth Date: August 5, 1997
Attending School: Home-School
Managing School: Winston Elementary School

## CERTIFICATION OF RECORD

I, Frederick E. Woods, Hearing Officer, certify that the attached Administrative

Record of Proceedings itemizes the complete record in this matter. It includes Petitioner

Exhibits AJ-01 through AJ-10 and list of five witnesses; and Respondent had no

witness list or exhibits. All papers in A.J.'s SHO file are either the original or true copy

of the original documents filed in this matter.

Executed this _20 th_ day of _May_, 2008.

_Paul E. Woods_
Due Process Hearing Officer

9

Re: MATTER OF
**A.J. v. DCPS, HOME-SCHOOL STUDENT**

# <u>RECORD OF PROCEEDINGS</u>

## <u>DATE:</u>          ## <u>DESCRIPTION:</u>

04/22/08          **Due Process Complaint Filed By Parent**

04/28/08          **Notice of Due Process Hearing Date Sent to Parties**

05/09/08          **The Due Process Hearing Convened; Completed;
                  Recorded in HR-4B Start Time 1:00 p.m. and End Time
                  3:00 p.m.**

05/20/08          **Hearing Officer's Decision Filed with the SHO**

05/20/08          **Hearing Officer's Decision Issued by the SHO**


**Frederick E. Woods**
**Due Process Hearing Officer**                    **Date**

10



# OSSE

**DC Office of the State Superintendent of Education**

---

| DATE: 5/20/08 | Total Number of Pages: 11 |
|---|---|
| TO: N. Mackin | COMPANY: Brown & Associates |
| PHONE: 21 742-2000 | FAX: 21 742-2098 |
| FROM: STUDENT HEARING OFFICE | SENDER PHONE: 202-698-3819 |
| SENDER FAX: 202-698-3825 | RE: Jeffries, Ameir |

**COMMENTS:**

---

1150 5th Street, SE, Washington, DC 20002
www.osse.dc.gov

# Exhibit B

*State Education Agency for the District of Columbia*
*State Enforcement and Investigation Division (SEID)*
*Special Education Programs*



# ADMINISTRATIVE DUE PROCESS COMPLAINT NOTICE

- The form is used to give notice of a due process complaint to the **District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents** with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. <u>A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).</u>

- The due process complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office for the DC Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002; fax number 202/442-5556.

- <u>Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice</u>. Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting (**called a "Resolution Session"**) with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. **The Student Hearing Office does NOT schedule resolution meetings**.

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

## A.   INFORMATION ABOUT THE STUDENT:

Name of the Student: __Ameir Jeffries____ Date of Birth: _8/05/97___

Address: __2904 Naylor Road, SE, Apartment #8150, Washington, DC 20020

Present School of Attendance: _____Home Schooling

Home School: <u>Winston Educational Center</u>
(Neighborhood school where child is registered)

Is this a charter school? <u>No</u>    (If yes, you must also provide a copy of this notice to the charter school principal or director)

Parent/Guardian of the Student: <u>Phyllis Jones</u>

Address (if different from the student's above): <u>same</u>

## B.    Legal Representative/Attorney (if applicable):

Name: <u>Nicole E. Mackin, Esq.</u>    Phone: (W) <u>202 742-2013</u>    (Fax) <u>202 742-2098</u>

Address: <u>1220 L St., NW, #700, Washington, D.C. 20005</u>

Will attorney / legal representative attend the resolution session?    **X** Yes    ☐ No

## C.    Complaint Made Against (check all that apply):

**X** DCPS

___ Charter school (name of the charter school if different from page one)

☐ Non-public school or residential treatment facility (name)

☐ Parent

## D.    Resolution Session Meeting Between Parent and LEA:

I understand that it is my right to have a resolution meeting to resolve this complaint. I also understand that I may voluntarily waive this right if I choose. (Note: All parties must agree to waive the resolution meeting to avoid having this meeting.)

<u>X</u>  The parent waives her right to the Resolution Session Meeting

## E.    Mediation Process:

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session Meeting or as an alternative to a Due Process Hearing. Please check all that apply:

**I am requesting an administrative due process hearing <u>only</u> at this time.**

## F.    Facts and Reasons for the Complaint

**A. Background:**

1. Ameir Jeffries is a ten-year-old student. His home school is Winston Educational Center, however, Ameir is currently being home-school, until an appropriate placement can be found for him. His mother worries about his safety and his social and emotional decline should he be forced to attend him home school, Winston Educational Center.

2. Prior to being home-schooled, Ameir lived in Virginia and attended Triangle Elementary School in Prince William County.

3. Prior to attending Triangle Elementary School in Virginia, Ameir attended Kimball Elementary School in the District of Columbia.

4. Ameir's most recent IEP, dated January 3, 2007 classifies him as Learning Disabled and entitles him to 15.5 hours per week of special education, including 15 hours of specialized instruction and .5 hours of psychological services.

5. Ameir's life has been turbulent during the last few years. He has lived in at least three separate homes during the last 18 months, he has been moved from Washington D.C. to Virginia, and back to Washington D.C., he has undergone surgery on a serious injury to his leg he received when he was in first grade, resulting in a lengthy hospital stay, his parents are in the process of divorcing, and his mother has been in and out of remission with cancer, mandating she undergo chemotherapy treatment.

6. As a result of the traumatic events that have occurred during the last couple of years, Ameir's mother reports he is substantially behind academically, due to the substantial schooling he has missed due to the serious injury on his leg and the subsequent surgeries that he has had to undergo. In fact, his mother reports he missed almost an entire year of school when the accident happened, and has not yet been able to catch up. Additionally, Ameir walks with a notable limp, and is very self-conscious and shy as a result. Ameir's mother reports that her son does not interact with other children and tends to stay in his "own world". He also frightens very easily, quickly introverts, and has an irrational fear of death. Ameir's mother reports she tried to send Ameir to his home school, but the chaotic surroundings terrified her son caused his to emotionally introvert.

7. Ameir is currently being home-schooled. Ameir's mother would like to get her son in an appropriate educational placement by the beginning of the 2008/2009 school year.

## B. Facts

8. The last IEP which was developed for Ameir was 1/3/07. This IEP was created while Ameir was attending Kimball Elementary School, prior to his move to Virginia. This IEP was created prior to many of the traumatic events that occurred in the young boys life, as discussed above.

9. In March 2007, Ameir transferred from Kimball Elementary School, in Washington D.C., to Triangle Elementary School, in Prince William County, Virginia.

10. On January 9, 2008, an Educational Report/Teacher Narrative was drafted by Heidi Milgrim, Special Education Teacher, and Aaron Sauter, Regular Education Teacher. Among the opinions in this report:

    a. Ameir had a total of fourteen (14) absences and seventeen (17) tardies that school year, attributed to Physical Therapy and surgery due to an injury that he incurred when he was younger. These absences have has a negative impact on his education;

    b. Ameir's current instructional level in Language arts is at mid-first grade, making him three years behind; and

    c. Ameir also showed marked delays in Written Language and Math.

11. According to an Educational assessment conducted on December 5, 2007, the following findings were made:

    a. Ameir's achievement in **reading** was in the **very low range**. He demonstrated limited skills in work recognition, decoding skills, and comprehension skills. He was not able to read basic sight words and showed limited knowledge for basic letter patterns and had difficulty decoding regular patterned words;

    b. Ameir's achievement in **writing** was in the **very low range**. He was not able to produce a readable sentence to express his ideas. He demonstrated a limited writing vocabulary and demonstrated limited knowledge for basic spelling patterns; and

    c. Ameir's achievement in **math** was in the **very low range.** He was not able to do calculations for multiple digits. He did not demonstrate knowledge for basic multiplication or division facts. He did not know many of his facts automatically. He was able to solve one-step story problems for single digit numbers with limited content.

12. According to a Psychological Evaluation administered on Ameir on November 30, 2007 and January 10, 2008, a Wechsler Intelligence Scale for Children, Forth Edition (WISC-IV) the following results were yielded:

| SCALE | COMPOSITE SCORE | PERCENTILE RANKING |
|---|---|---|
| Verbal Comprehension | 87 | 19 |
| Perceptual Reasoning | 79 | 8 |
| Working Memory | 83 | 13 |
| Processing Speed | 94 | 34 |
| Full Scale | 81 | 10 |

13. An Assessment Report Update drafted by Celeste M. Sharper, MSW, School Social Worker on January 10, 2008, found, "academically, Ameir is reading at a kindergarten level." The report continued, reviewing his medical history reported, "According to Mrs. Jeffries, Ameir broke his leg resulting [from] an accident while he was in first grade. He was thrown from a tractor-trailer and was out of school for a whole year."

14. In January, 2008, Ameir underwent a three-year re-evaluation to determine whether he continued to require special education services. Ameir was found eligible for special education services at this time.

15. On January 11, 2008, a Prior Written Notice was issued, proposing to identify Ameir as a special education student under the disability of Specific Learning Disability.

16. On January 11, 2008, an IEP/MDT team found Ameir eligible as a student with a specific learning disability in the areas of basic reading skills, written expresssion, reading fluency and math calculation  According to the Eligibility Group Summary, Ameir has processing deficits.

17. Despite being found eligible, an IEP was never developed, due to the fact that soon after the eligibility decision was made, Ameir moved back to Washington D.C.

18. On March 24, 2008, Phyllis Jones, Ameir Jeffries mother, registered him as a non-attending student at his home school, Winston Educational Center. He is being home-schooled until an appropriate placement can be found.

19. On March 28, 2008, a letter was sent, through counsel, to Katie Jones, Principal, Winston Education Center, requesting a meeting to be scheduled as soon as possible to review evaluations, develop an IEP, and determine appropriate placement for Ameir. No response has been received, and no meeting has been convened. In the interim, Ameir is being deprived of his opportunity to receive a FAPE.

**C. DCPS failed to provide a free and appropriate public education by failing to convene an IEP team meeting upon parental request.**

20. The parent re-asserts all prior allegations.

21. Pursuant to 34 C.F.R. § 300.324(b)(1), DCPS must ensure that the IEP Team reviews the child's IEP periodically, but not less than annually, to determine whether the annual goals for the child are being achieved; and revises the IEP, as appropriate, to address any lack of expected progress toward the annual goals…and in the general education curriculum, if appropriate; the results of any reevaluation conducted …; information about the child provided to, or by, the parents…; the child's anticipated needs; or other matters.

22. The parent, through counsel, requesting that the student's MDT/IEP Meeting be convened to review evaluations, develop an IEP, and determine appropriate placement for Ameir.  To date, DCPS has yet to convene an IEP team meeting.

23. DCPS' failure to convene the MDT/IEP meeting amounts to a denial of a free and appropriate public education by denying her the right to participate in the decision making process for her child.

**D. DCPS denied the student a free and appropriate public education by failing to develop an IEP that is reasonably calculated to provide a free and appropriate public education.**

24. The parent re-asserts all prior allegations.

25. DCPS, as the local and state education agency, is to make certain that the educational programs or IEP are developed, reviewed, and revised for each student within its jurisdiction that may require one. In the instant matter, it is clear DCPS has failed to comply with the requirements of the statute.

26. On March 28, 2008, parent, through counsel, requested an MDT meeting to review evaluations, develop an IEP, and determine appropriate placement for Ameir.

27. By failing to respond to parent's request to convene an MDT meeting and to review evaluations, develop an IEP, and determine appropriate placement for Ameir, the child has been harmed. He has been forced to be home-schooled until an appropriate placement has been found, since his mother fears for his social and emotional growth, as well as his safety, should she be forced to send him to his neighborhood school.

**E. DCPS failed to provide a free and appropriate public education by failing to provide an appropriate placement.**

28. The parent re-asserts all prior allegations.

29. DCPS, as the local and state education agency, is to make certain that the educational placement, for each child with a disability within its jurisdiction, is able to implement the student's Individualized Educational Program. Pursuant to 34 C.F.R. § 300.17, DCPS, as the local and state education agency, is to make certain that the educational placement, for each child with a disability within its jurisdiction, is able to implement the student's Individualized Educational Program.

30. Pursuant to 34 C.F.R. § 300.17, Free appropriate public education or FAPE means special education and related services that are provided at public expense, under public supervision and direction, and without charge; meet the standards of the SEA…include an appropriate preschool, elementary school, or secondary school education in the State involved; and are provided in conformity with the individualized education program (IEP)…"

31. DCPS shall implement an IEP for each student with a disability. *See id.* at § 614(d)(2). Pursuant to D.C. MUN. REGS. tit. 5, § 3010.2 (2003), DCPS "shall implement an IEP as soon as possible after the meeting where the IEP is developed…" Pursuant to 34 C.F.R. § 300.115(a), DCPS "must ensure that a continuum of

alternative placements is available to meet the needs of children with disabilities for special education and related services." A free appropriate public education includes placement in an appropriate school capable of implementing a student's IEP. Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C.§ 1402 (9) (D); § 1401 (29) (D) ("The term 'special education means specially designed instruction, at no cost to the parents, to meet the unique needs of a child with a disability [. . . ]."); 34 C.F.R. § 300.17 & 39; 34 C.F.R. § 300.116 (placement is to be based on student's IEP); 34 C.F.R. § 300.327 & 300.501 (c); D.C. Mun. Regs. Tit. 5 § 3013.1-7 (LEA to ensure that child's placement is based on the IEP); and D.C. Mun. Regs. Tit. 5 § 3000.

32. In the instant case, Winston Education Center is an inappropriate placement for Ameir. The chaotic nature of the school makes it impossible for Ameir to learn and thrive, and will lead to his emotional, social, and educational decline.

## G.    Relief Sought.

33. DCPS, within five (5) business days, convene an MDT/IEP Meeting to review evaluations, develop an IEP, and determine appropriate placement for Ameir. During this meeting Ameir should be found eligible for special education services as a student with a Specific Learning Disability.

34. Provide any other relief deemed appropriate and relating to the violations committed here.

35. DCPS agrees to pay the parent's reasonable attorney's fees and costs;

36. All meetings shall be scheduled through counsel for the parent, Nicole E. Mackin, Esq. in writing, via facsimile, at 202-742-2097 or 202-742-2098;

37. Provide the student with a due process hearing within 20 calendar days of a request on any issue arising out of the noncompliance with the DCPS' obligation hereunder, or any disagreement with the assessment, programming or placement the parent may have;

38. In the event that the DCPS shall fail to comply with the terms herein, then under the Conciliation Agreement, the parents shall have the authority to use self help without further notice to the DCPS, and initiate an IEP with the DCPS' invited participation, and unilateral placement in an interim school or educational program until such time the DCPS can come into compliance and properly assess, program and/or participate;

39. The DCPS shall ensure that this student has available a Free and Appropriate Public Education including special education, transportation D.C.Mun. Regs. Tit. 5 § 3000.3, and other related services as are defined at 34 C.F.R. § 300.34 designed to meet this student's unique needs and preparation for employment and independent living;

40. Provide counsel for the parent with copies, pursuant to D.C. Mun. Regs. Tit. 5 §

3021.8, of all evaluation reports and all educational records on the student no later than sixteen business hours prior to the convening of any meeting;

41. That DCPS within ten (10) calendar days of the filing of this complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C.§ 1415 (c) (2) (B), provide the parent's representative, Nicole E. Mackin, Esq., via facsimile, at 202-742-2097 or 202-742-2098, the following: i) an explanation of why DCPS proposed or refused to take the action raised in the complaint; ii) a description of other options that DCPS considered and the reasons why those options were rejected, iii) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and iv) a description of the other factors that are relevant to the agency's proposed or refused action;

42. That DCPS, in the event they fail to answer/respond to the issues alleged in the parent's administrative due process hearing complaint, within ten (10) calendar days, the arguments and facts as averred by the parent will be deemed true and accurate and act as a waiver, on the part of DCPS, for their desire to have a Resolution Session Meeting, and the parent's administrative due process hearing will be scheduled pursuant to the applicable timelines contained in the IDEIA;

43. That DCPS, within fifteen (15) calendar days of receiving the parent's complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C.§ 1415 (c) (2) (C), respond to the parent's request alleging any insufficiency of notice;

44. That DCPS' failure to comply with the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C.§ 1415 (c) (2) (C), and allege any insufficiency of the parent's administrative due process complaint, will constitute waiver on the part of DCPS to make such argument at any later date and time; and

45. The parent is the prevailing party in this matter.

## G.    Accommodations and Assistance Needed:

Please list any special accommodations you may require for a Resolution Session Meeting/Mediation Conference/Due Process Hearing.

- Interpreter (please specify the type)_____ ____
- Special Communication (please describe the type)_____ ___
- Special Accommodations for Disability (please be specific)_____ _____
- Other_____ _____ _____ ___

## H.    Signature:

_____     April 22, 2008
Legal Representative / Advocate (if applicable)     Date

**Mail, fax or deliver this complaint notice to:**
**State Enforcement and Investigation Division**
**For Special Education Programs (SEID)**
**Student Hearing Office (SHO)**
**825 North Capitol Street, NE, 8th Floor**
**Washington, DC  20002**
**Fax number: 202/698-3825**

# Exhibit C

**STATE EDUCATION AGENCY FOR THE DISTRICT OF COLUMBIA
STATE ENFORCEMENT AND INVESTIGATION DIVISION (SEID)
SPECIAL EDUCATION PROGRAMS**

| | |
|---|---|
| Ameir Jeffries | ) |
| DOB: 8/5/97 | ) Hearing Officer Frederick Woods, Esq. |
| | ) |
| Vs | ) |
| | ) |
| District of Columbia Public Schools. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

**Parent's Opposition to District of Columbia Public School's Motion to Dismiss**

COMES NOW Phyllis Harris, mother and legal guardian of the above-referenced student, through counsel, and respectfully submits this opposition to District of Columbia Public Schools ("DCPS") <u>Motion to Dismiss</u> filed on or about May 7, 2008.

**Standard of Review**

Borrowing from federal authority, the standard to be applied in reviewing a motion to dismiss under Rule 12(b) (6) requires the court to take the factual allegations of the complaint as true and that any ambiguities or doubts must be resolved in favor of the pleader. To survive a 12(b) (6) motion, the complaint must merely set forth sufficient information to suggest that there exists ***some <u>recognized legal theory</u> upon which relief can be granted***. If this cannot be done, the court must dismiss a complaint where, even assuming all the factual allegations are true, the plaintiff has failed to establish a right to relief based upon those facts. <u>See</u> <u>Caudle v. Thompson</u>, 942 F.Supp.635, 638 (D.D.C. 1996), *citing* <u>Gregg v. Barnett</u>, 771 F. 2d 539, 547 (D.C. Cir. 1987).

Furthermore, the court must limit its review to the pleadings and the defendants must show beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Caudle, 942 F. Supp. At 638, *citing* In re: Swine Flu Immunization Prods. Liability Litigation, 880 F.2d 1439, 1442 (D.C. Cir. 1989) (*quoting* Conley v. Gibson, 355 U.S. 41, 45-46 (1955).

## Facts

On April 22, 2008, a Due Process Complaint was filed on behalf of Ameir Jeffries. On or about May 7, 2008, DCPS filed the present Motion to Dismiss arguing that the parent's complaint should be dismissed because there is no requirement for DCPS to provide a home-schooled student with FAPE.

In support of their Motion to Dismiss, DCPS cites no statutes, regulations or case law.

## Argument

DCPS' Motion to Dismiss should be denied and the case should proceed to hearing in the normal course because, this Motion was filed untimely. DCPS's Motion to Dismiss was filed on May 7, 2008, only two (2) days before the scheduled hearing. Pursuant to the Special Education Student Hearing Office Due Process Hearing Standard Operating Procedures, § 401 (C) (4), "All motions must be filed no later than the 5-day deadline for disclosing evidence and witnesses." In the instant case, the 5-day deadline passed on May 2, 2008. DCPS has shown no good cause for the late filing, therefore, this Motion to Dismiss should be denied.

Furthermore, the Motion to Dismiss is without merit. Under IDEA there is no requirement for a student to attend inappropriate public placement prior to DCPS

convening a meeting to discuss the appropriateness of the placement.

Regarding the need to "try out" Winston Elementary School before requesting a meeting to discuss the appropriateness of this placement, DCPS' position is essential the same one that that the U.S. Supreme Court found unconvincing when it affirmed the decision of the Second Circuit Court of Appeals in *Tom F.. Board of Ed. of the City School District of New York v. Tom F., on Behalf of Gilbert F., a minor child*. 552 U.S. ___ (2007).

The history of Tom F. is somewhat confusing and merits some discussion. Gilbert F. is a student in a private school in New York for students with learning disabilities, Tom F. is his father. Gilbert enrolled in the private school in 1995. In 1996 his father requested that the LEA evaluate Gilbert for special education services. The LEA did so and Gilbert was found eligible for services, given an IEP and the LEA paid for Gilbert's tuition for the 1997-8 and 1998-9 school years. In July of 1999, the LEA attempted to change Gilbert's placement over his parent's objection. The dispute went to a Due Process Hearing where the parent prevailed. The LEA appealed to the State level and where again the parent prevailed. The LEA appealed again to the U.S. District Court for the Southern District of New York. On January 3, 2005, the district court overturned the decisions of the impartial hearing officer and review officer. Reading 20 U.S.C. 1412(a)(10)(C)(ii) in isolation, the Court ruled "that where a child has not previously received special education from a public agency, there is no authority to reimburse the tuition expenses arising from a parent's unilateral placement of a child in private school." 20 U.S.C. 1412(a)(10)(C)(ii) reads as follows:

(ii) Reimbursement for Private School Placement. If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary or secondary school without the consent or or referral by the public agency, a court of a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment." 20 U.S.C. 1412(a)(10)(C)(ii)

Tom F. appealed this decision to the United States Court of Appeals, Second Circuit.

In the interim, another case was working its way through the court system, that of Frank G. *Frank G. v. Board of Educ. of Hyde Park*, 459 F.3d 356 (2nd Cir., 2006). This was another case where a parent (Frank G.) was seeking reimbursement for private school tuition for his child Anthony who, like Gilbert, had never gone to public school. In this case, the LEA, the Board of Education of Hyde Park Central School District appealed from a judgment of the United States District Court for the Southern District of New York (Brieant, J.) finding that the School District had failed to provide Anthony with a free appropriate public education. The LEA made, in part, the same argument the that the District Court in *Tom F.* made, specifically arguing that the District Court erred in awarding Anthony's parents reimbursement for tuition and attorneys' fees because the IDEA, 20 U.S.C. § 1412(a)(10)(C), permits reimbursement **only** where a child has previously received special education and related services.

On July 27, 2006 The United States Court of Appeals, Second Circuit, decided in the parent's favor and specifically found that there was no requirement that a student attend public school prior to the student being eligible to receive tuition reimbursement

for a non-public placement. In its decision the Court of Appeals discussed the maxims of statutory interpretation, the broader statutory context of 20 U.S.C. 1412(a)(10)(C)(ii), the goals of IDEA and IDEIA, and the history of the remedy of tuition reimbursement. Ultimately the Court held in favor of Anthony's parents, writing:

> This brings us to the last rule of statutory construction applicable here. This rule, as we previously observed, is that ambiguous statutes are to be construed so as to avoid absurd results. The School District's interpretation of 20 U.S.C. § 1412(a)(10)(C)(ii) would produce such results. It would, for instance, prevent children who are provided with inadequate IEPs from receiving a free appropriate public education if their disabilities were detected before they reached school age. **It would also place the parents of children with disabilities in the untenable position of acquiescing to an inappropriate placement in order to preserve their right to seek reimbursement from the public agency that devised the inappropriate placement**. Such a result, it has been suggested, "ensures that a parent's rejection of a public school placement is not based on mere speculation as to whether the recommended school placement would have been appropriate." *Tom F.,* 2005 WL 22866, at *3. This suggestion turns on the erroneous assumption that parents would have to keep their child in a public school placement until it was clear that their "speculation" was borne out by a wasted year of actual failure. **Such a "first bite" at failure is not required by the IDEA.** All that is required of parents who have received an IEP for their child is that they provide the appropriate public agency with reasonable notice that they plan to "reject [] the placement proposed by the public agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense." 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(aa)-(bb). Because such notice was provided here, Anthony's parents would have been free to enroll him in a private school if they had enrolled him first in the Smith School as provided in the IEP and then removed him thereafter.
>
> We believe that it is unreasonable to suggest that Anthony's parents were legally required to engage in such a useless and potentially counterproductive exercise .... We decline to interpret 20 U.S.C. § 1412(a)(10)(C)(ii) to require parents to jeopardize

their child's health and education in this manner in order to qualify for the right to seek tuition reimbursement.

(emphasis added)

Two weeks later, on August 9, 2006, in an unpublished Summary Order, the U.S. Court of Appeals for the Second Circuit vacated and remanded the district court's decision in *Tom F.* for further proceedings in light of their decision in *Frank G.* In February of 2007, the U.S. Supreme Court granted certiorari and ultimately affirmed the decision of the U.S. Court of Appeals for the Second Circuit in *Tom F.* and by extension, *Frank G. Supra.*

In this case, DCPS is refusing to provide Ameir with a meeting to discuss appropriate placement solely because he has not availed himself of the placement offered by the LEA – Winston ES, in spite of the fact that this placement is not capable of proving Ameir with what he needs. This is exactly the absurdity the Court in *Gilbert F.* is seeking to avoid.

## Conclusion

DCPS' Motion to dismiss the parent's due process complaint dated May 7, 2008, should be denied for the reasons stated above.

Respectfully submitted,

Nicole E. Mackin
Counsel for the Petitioner

## JAMES E. BROWN & ASSOCIATES, PLLC
### *A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Kimberly Glassman |
| Domiento C.R. Hill | 1220 L Street, NW | Seth Diamond |
| Roberta Gambale | Suite 700 | Maria Blaeuer |
| Christopher L. West | Washington, DC 20005 | Talib Abdus-Shahid |
| John A. Straus | Telephone: (202) 742-2000 | Amee Vanderpool |
| Juan J. Fernandez!+ | Facsimile: (202) 742-2098 | Nicole Mackin |
| Tilman L. Gerald | e-mail: Admin@Jeblaw.biz | Miguel A. Hull |
| Roxanne D. Neloms | | |

--------------------------------

--------------------------------

! DC Bar Special Legal Consultant

+ Admitted in Bolivia

# *FAX COVER SHEET*

**DATE:**      May 8, 2008

**TO:**        Frederick Woods, Hearing Officer
               Student Hearing Office of the District of Columbia Public Schools

**TEL NO.:**   (202) 698-3819

**FAX NO.:**   (202) 698-3825

**FROM:**      Heidi Romero, Legal Assistant to Nicole E. Mackin, Esq.

**SUBJECT:**   Parent's Opposition to DCPS' Motion to Dismiss
               Student: Ameir Jeffries

NUMBER OF PAGES INCLUDING COVER SHEET: <u>7</u>

COMMENTS:

**STATEMENT OF CONFIDENTIALITY:**
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, please notify James E. Brown and Associates, PLLC immediately at (202) 742-2000, and destroy all copies of this message and any attachments.

## JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Kimberly Glassman |
| Domiento C.R. Hill | 1220 L Street, NW | Seth Diamond |
| Roberta Gambale | Suite 700 | Maria Blaeuer |
| Christopher L. West | Washington, DC 20005 | Talib Abdus-Shahid |
| John A. Straus | Telephone: (202) 742-2000 | Amee Vanderpool |
| Juan J. Fernandez!+ | Facsimile: (202) 742-2098 | Nicole Mackin |
| Tilman L. Gerald | e-mail: Admin@Jeblaw.biz | Miguel A. Hull |
| Roxanne D. Neloms | | |

------------------------------------

------------------------------------
! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# *FAX COVER SHEET*

DATE:        May 8, 2008

TO:          Laura George
             Office of the Attorney General- DCPS

TEL NO.:     (202) 442-5000

FAX NO.:     (202) 442-5098/5097

FROM:        Heidi Romero, Legal Assistant to Nicole E. Mackin, Esq.

SUBJECT:     Parent's Opposition to DCPS' Motion to Dismiss
             Student: Ameir Jeffries

NUMBER OF PAGES INCLUDING COVER SHEET: <u>7</u>

COMMENTS:

**STATEMENT OF CONFIDENTIALITY:**
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, please notify James E. Brown and Associates, PLLC immediately at (202) 742-2000, and destroy all copies of this message and any attachments.

```
*********************
***   TX REPORT   ***
*********************
```

TRANSMISSION OK

| | | |
|---|---|---|
| TX/RX NO | 4643 | |
| CONNECTION TEL | | 96983825 |
| CONNECTION ID | | |
| ST. TIME | 04/22 15:38 | |
| USAGE T | 01'33 | |
| PGS. SENT | 10 | |
| RESULT | OK | |

# JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

| James E. Brown | Attorneys at Law | Roxanne D. Neloms |
|---|---|---|
| Domiento C.R. Hill | 1220 L Street, NW | Kimberly Glassman |
| Roberta Gambale | Suite 700 | Seth Diamond |
| Christopher L. West | Washington, DC 20005 | Maria Blaeuer |
| John A. Straus | Telephone: (202) 742-2000 | Talib Abdus-Shahid |
| Juan J. Fernandez!+ | Facsimile: (202) 742-2098 | Amee Vanderpool |
| Tilman L. Gerald | e-mail: Admin@Jeblaw.biz | Nicole Mackin |

! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# *FAX COVER SHEET*

DATE:        April 22, 2008

TO:          Sharon Newsome
             Student Hearing Office of the District of Columbia Public Schools

TEL NO.:     (202) 698-3819

FAX NO.:     (202) 698-3825

FROM:        Heidi Romero, Legal Assistant to Nicole E. Mackin, Esq.

SUBJECT:     Administrative Due Process Complaint Notice for Ameir Jefferies

NUMBER OF PAGES INCLUDING COVER SHEET: **10**

COMMENTS:

# Exhibit D

**Education Agency for the District of Columbia**
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**

Ameir Jeffries [DOB: 8/5/1997],

    Petitioner,

      v.

District of Columbia Public School
    Respondent.

<u>**DCPS's Motion to Dismiss Petitioner's Due Process Complaint**</u>

    The District of Columbia Public Schools (hereinafter "DCPS"), by and through the undersigned Attorney Advisor, hereby provides its Motion to Dismiss the Administrative Due Process Complaint Notice ("Complaint") filed on or about April 22, 2008, on behalf of the parent of the above-named student, pursuant to the Individual's with Disabilities Education Improvement Act (hereinafter "IDEA 04"), 20 U.S.C. §1415(c)(2)(B)(i)(I). Specifically, DCPS asserts the following:

1. The student recently moved from Virginia to the District of Columbia.
2. On or about March 27, 2008, the parent went to Winston EC to enroll the student.
3. The parent explained that she wanted to enroll her son as non-attending, and had no intention of her son actually attending Winston EC. She stated that she intended to home-school her son.
4. On March 28, 2008, the parent, through counsel, sent a letter to the principal of Winston EC requesting "an MDT meeting to be scheduled as soon as possible . . . This meeting is needed to review evaluations, develop IEP, and determine appropriate placement for Ameir."
5. On April 22, 2008, petitioner filed this complaint alleging that DCPS denied the student FAPE by failing to convene a meeting, failing to develop an IEP, and failing to provide an appropriate placement.
6. Petitioner's complaint should be dismissed for the following reasons.
7. As stated in petitioner's complaint, the student is home-schooled. There is no requirement for DCPS to provide a home-schooled student with FAPE.
8. Alternatively, the parent should not be permitted to simply move into the District of Columbia, enroll her child in a D.C. public school with no intention of him attending

Motion to Dismiss Due Process Complaint (Annoir Jeffrise)
Page 2

there, methodically demand an IEP meeting from a school that has never met nor even seen the student, and file a complaint less than a month later. Clearly petitioner is attempting to game the system.

Submitted by:

Latina Gleason
Attorney Advisor
Office of the General Counsel
District of Columbia Public Schools
Direct# 202-442-5180
Fax # 202-442-5097/8

May 7, 2008

# Exhibit E

☒ ☐

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, D.C.**
**INDIVIDUALIZED EDUCATIONAL PROGRAM**

DCPS - IEP  Page 1 of 4
Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

Student Name: Last **Jeffries**    First **Ameir**    MI

Student ID **9119794**    Soc. Sec. No. **578292316**    Age: **9**    Grade **03**

Gender ☒M ☐F    Date of Birth **8/5/1997**    Ethnic Group **Black**

Address **315    Anacostia Road SE Apt 204    SE**
House No.    Street Name    Quadrant    Apartment #
**Washington    DC    20019**
City    State    Zip Code

☐ Non-attending

Attending School **Kimball Elementary**    Home School

☒ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS /

Parent **Ms. Jeffries**

Address of (if different from student):    ☒ Parent ☐ Guardian ☐ Surrogate

House No.    Street Name    Quad    Apt. No    City    State    Zip Code
Telephone: Home **2025836140**    Work

## II. CURRENT INFORMATION

Date of IEP Meeting: **1/3/2007**

Date of Last IEP Meeting: **2/21/2006**

Date of Most Recent Eligibility Decision: **2/23/2005**

Purpose of IEP Conference:
☐ Initial IEP    ☒ Review of IEP
☐ Requested Eval.    ☐ 3yr ReEval.

Indicate Level of Standardized Assessment:
Level IV

**ADDENDA TO BE ATTACHED AS NEEDED**
**Check the appropriate box(es)**

| ☐ | BEHAVIOR | | TRANSPORTATION |
| ☐ | ESY | | TRANSITION |

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used In Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | English | English | English | Native Language | Oral |
| Parent | English | English | English | Native Language | Rdg./ Written |
| Home | English | English | English | Native Language | Instrument |
| | | | | | Date |

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd | | | SpecEd | | | FREQUENCY Hr / Min | D/W/M | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # | wks/mos |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Ses. | Time | Total | Ses. | Time | Total | | | | | | |
| Specialized Instruction | 0 | 0 | 0 | 1 | 15 | 15 | Hrs | Week | Special Education Teacher/R | 1/8/2007 | 10 | Month |
| Psychological Services | 0 | 0 | 0 | 1 | .5 | 0.5 | Hrs | Week | School Social Worker | 1/8/2007 | 10 | Month |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| TOTAL HOURS: | | 0 | | | 15.5 | | Total Combined Hours Per Week: | | | | | |

## V. Disability(ies) Learning Disabled

☐ (Check if setting is general Ed )

Percent of time in Specialized Instruction and Related Services
☐ 0-20% ☒ 21-60% ☐ 61-100%

Percent of time NOT in a General Education Setting    48 %

## VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

Phyllis Jones
Parent/Guardian

S. Thomashow
Special Ed

R. Brummell
General Ed Teacher

R.Rabb
LEA Representative

R.Rabb
Principal or Designee

*[signatures]*

Student

Ms. Byrnes
Social Worker

*[signatures]*

✓ *I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.*
Parent/Guardian Signature    *[signature]*    Date **1/3/07**

District of Columbia Public Schools    04-02-2004    Division of Special Education    Appendix - A    IEP Page 1 of 4

| Student Name | Ameir | Jeffries | Managing School | Kimball Elementary | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number 9119794 | | DOB 8/5/1997 | Attending School | Kimball Elementary | Page 2 of 4 |

## VII. Present Educational Performance Levels in Areas Affected by the Disability

Additional Comments: ☐

**Academic Areas: (Evaluator)** Special Education Teacher

Math Strengths.

Ameir is able to add two digit whole numbers with regrouping.

Impact of disability on educational performance in general education curriculum:

Ameir has difficulty with word problems and the process of subtracting with regrouping.

Reading Strengths:

Ameir can identify all letters and corresponding sounds. When prompted, he can read simple decodable words.

Impact of disability on educational performance in general education curriculum:

Ameir has difficulty applying his decoding strategies when reading text. He has difficulty answering reading comprehension questions.

**Score(s) When Available**
Math Cal 100
Math Rea 80
See goal page 2
Date. 2/2/2005
Rdg Com 0
Rdg Basic 77
Written Ex. 59
See goal page: 1
Date: 2/4/2005

**Communication (Speech & Language) (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**
Exp Lang
Rec-Lang
Artic
Voice
Fluency
Exp Voc.
Rec Voc.
See goal page
Date:

**Motor/Health (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) /Results When Available**
See goal page:
Date

**Social Emotional Behavioral Areas: (Evaluator)** *Social worker*
Strengths:

Ameir enjoys interacting with his peers

Impact of disability on educational performance in general education curriculum:

Ameir consistently misses several days per month from school which impacts his educational performance

**Score(s) When Available**
N/A
See goal page: 5
Date: 2/17/06

**Cognitive/Adaptive Behavior: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**
See goal page:
Date:

**Prevocational Skills: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum

**Score(s) When Available**
See goal page
Date:

| Student Name | Ameir | Jeffries | Managing School | Kimball Elementary | DCPS IEP |
|---|---|---|---|---|---|
| Student ID Number 9119794 | | DOB 8/5/1997 12:00 | Attending School | Kimball Elementary | Page 3 of 4 |

| **VIII. SPECIALIZED SERVICES** | Additional Comments: ☐ | | Goal Number: 1 |
|---|---|---|---|

**Area addressed by goal:** Academic Areas: Reading

**ANNUAL GOAL:** (including mastery criteria )

Ameir will increase reading skills by ten months by mastering the following short-term objectives with at least 80% accuracy as measured by formal and informal assessment.

**Provider(s):** Special Education Teacher/Resource Room Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Given ten second grade high frequency/sight words, read fluently with 80% accuracy. | | Monthly |
| Given a reading selection at instructional level and graphic organizer, Ameir will retell story events in correct sequence in 4 out of 5 trials. | | Monthly |
| Given five words, correctly determine the meaning of words by using a dictionary/thesaurus in 4 out of 5 trials. | | Monthly |
| When prompted, apply letter-sound correspondences to consonant blends (bl, st, tr) to combine sounds into recognizable words in 4 out of 5 trials. | | Monthly |
| | | |
| | | |

| **EVALUATION PROCEDURE(S)** |
|---|
| ☒ Portfolio ☐ Log ☐ Chart ☒ Test ☐ Documented Observation ☐ Report ☒ Other informal assessment |

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4

| Student Name | Ameir | Jeffries | | Managing School | Kimball Elementary | | DCPS - IEP |
|---|---|---|---|---|---|---|---|
| Student ID Number | 9119794 | | DOB 8/5/1997 12:00 | Attending School | Kimball Elementary | | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**    Additional Comments: ☐    Goal Number: 2

**Area addressed by goal:**    Academic Areas: Math

**ANNUAL GOAL: (including mastery criteria.)**

Ameir will demonstrate ten months growth in mathematics skills by mastering the following short-term objectives with at least 80% accuracy as measured by formal and informal assessment.

**Provider(s):** Special Education Teacher/Resource Room Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Given ten problems, correctly subtract 2 digit x 2 digit problems with regrouping in 4 out of 5 trials. | | Monthly |
| Given fraction manipulatives, correctly identify parts and wholes in 4 out of 5 trials. | | Monthly |
| When prompted, correctly investigate place value to the thousands place in 4 out of 5 trials. | | Monthly |
| Given ten problems, correctly multiply 2 x 1 digit problems in 4 out of 5 trials. | | Monthly |
| When prompted and given ten problems, understand the concept of division in 4 out of 5 trials. | | Monthly |
| Given a collection of data or a graph, Ameir will analyze the data and answer accompanying questions in 4 out of 5 trials. | | Monthly |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☐ Documented Observation  ☐ Report  ☒ Other  informal assessment

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4

| Student Name | Ameir | Jeffries | Managing School | Kimball Elementary | DCPS - IEP |
| Student ID Number | 9119794 | DOB 8/5/1997 12:00 | Attending School | Kimball Elementary | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | Goal Number: 3 |

**Area addressed by goal:** Academics: Written Expression

**ANNUAL GOAL:** (including mastery criteria.)

Ameir will deomonstrate ten months growth in written expression skills by mastering the following short-term objectives with at least 80% accuracy as measured by formal and informal assessment.

**Provider(s):** Special Education Teacher/Resource Room Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| When prompted, Ameir will recognize distinguishing features of a sentence (capitalization and ending punctuation) in 4 out of 5 trials. | | Monthly |
| When prompted, Ameir will correctly identify parts of speech and use them in simple sentences in 4 out of 5 trials. | | Monthly |
| Given a topic and set of words, Ameir will use them to write short, complete sentences in 4 out of 5 trials. | | Monthly |
| Provided examples complete sentences (with subject and predicate), Ameir will correctly write complete sentences in 4 out of 5 trials. | | Monthly |
| | | |
| | | |

| **EVALUATION PROCEDURE(S)** |
| ☒ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☒ Documented Observation  ☐ Report  ☒ Other informal assessment |

District of Columbia Public Schools      07-02-2001      Division of Special Education      Appendix - A      IEP Page 3 of 4

| Student Name | Ameir | Jeffries | Managing School | Kimball Elementary | | DCPS - IEP |
|---|---|---|---|---|---|---|
| Student ID Number | 9119794 | | DOB 08/05/1997 | Attending School | Kimball Elementary | Page 3 of 4 |

| **VIII. SPECIALIZED SERVICES** | **Additional Comments:** ☐ | **Goal Number:** 4 |
|---|---|---|

**Area addressed by goal:** Social Emotional Behavioral

**ANNUAL GOAL:** (including mastery criteria )

Ameir will improve his self-confidence, social emotional and self-esteem goals by mastery of his short-term objectives by 80% accuracy.

**Provider(s):** School Social Worker

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Ameir will identify positive characteristics with 2 out of 3 trials with 75% accuracy. | | Monthly |
| Ameir will practice and role-play realistic life situations with 2 out of 3 trials with 75% accuracy. | | Monthly |
| Ameir will take pride and initiative in achieving and completing homework and class assignments with 80% accuracy. | | Monthly |
| Teacher, student and parent will work towards incentives to improve students attendance with 80% accuracy. | | Monthly |
| Ameir will learn coping techniques to manage stressful situations with 2 out of 3 trials with 75% accuracy. | | Monthly |
| | | |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☒ Log  ☐ Chart  ☐ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4

| Student Name | Ameir | Jeffries | Managing School | Kimball Elementary | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 9119794 | DOB 8/5/1997 | Attending School | Kimball Elementary | Page 4 of 4 |

**Additional Comments:** ☐

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in general education? ☐ Yes ☒ No

Explanation for removal out of regular education classroom

Student is significantly below grade level and requires intensive/individualized instruction

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING GenEd | SpEd | Total | FREQUENCY Hr./Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing:  ☐ None needed

| | |
|---|---|
| Timing/Scheduling: | Extended time |
| Setting. | Reduced, minimalized distractions |
| Presentation | Read directions/test to student |
| Response: | |
| Equipment: | |

## XI. STATE AND DISTRICT ASSESSMENTS:

☐ **Level I**  Tested with non-disabled peers under standard conditions without accommodations.

☐ **Level III** (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

☐ **Level V** Portfolio:

☐ **Level II**  (Describe accommodations for level II) Tested under standard conditions with special accommodations

☒ **Level IV** (Describe the alternative assessment)

read test and directions to students

## XII. Areas Requiring Specialized Instruction and Related Services:

| | | Modifications: |
|---|---|---|
| ☒ Reading | ☐ Physical/Sensory | ☐ Transition | ☒ Language Arts/English |
| ☒ Mathematics | ☒ Social Emotional | ☐ Vocational | ☐ Social Sciences |
| ☒ Written Expression | ☐ Physical Development | ☐ Independent Living | ☐ Biological & Physical Sciences |
| ☐ Other: | | ☐ Speech/Language | ☐ Fine Arts |
| ☐ None | Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above. | | |

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| In General Education Classroom Setting | Rejected | Continued school failure |
| Combination General Education and Resource Classro | Accepted | Time away from non-disabled peers in academic sett |
| Out of General Education Classroom | Rejected | Impact on self-esteem |
| | | |
| | | |

Modification(s)/Accommodation(s) to address the harmful effects:

Participation in counseling to address self-esteem issues

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 4 of 4

## DOCUMENTED LEVEL OF SERVICE
Complete and attach to MDT/IEP meeting notes

| School | Kimball Elementary | Principal | S. Miller | Special Education Coordinator | Robin Rabb |
|---|---|---|---|---|---|

| Date 1/3/2007 | Case Manager R.Rabb | Assistant Director Jennifer Finch |
|---|---|---|

| Student Ameir | Jeffries | DOB 8/5/1997 | Age 9 | Grade 03 | ID# 9119794 | SSN# 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 |
|---|---|---|---|---|---|---|

Parent Ms. Jeffries     Telephone (H) 2025836140     (W)

| Address: 315 | Anacostia Road SE Apt 204 | | SE | Washington | | DC | 20019 |
|---|---|---|---|---|---|---|---|
| Street # | Street | | Quad  Apt. No | City | | State | Zip Code |

REFERRAL SOURCE: (Check) [ ] 120 Day  [ ] Reeval.  [ ] HOD  [ ] SA  [ ] MA  [X] Annual

[ ] Nonpublic  [ ] Residential  [ ] Citywide  [ ] Courts  [X] Local School  [ ] Other

Previous least restrictive environment (LRE Setting):     Combination general education and resource classroom

---

## JUSTIFICATION FOR SETTING CONSIDERATION
### (Submit TAT/MDT Documentation)
### SUPPORTIVE DATA/DOCUMENTATION

| 2. ACCOMMODATIONS/ MODIFICATIONS | 3. DATA REQUIREMENTS |
|---|---|
| Allowance of extra time to think, read test directions to student, reduced minimalized distraction and small group setting. | Current IEP — Yes [X] No [ ]<br>Signatures of required participants (MDT notes) — Yes [X]<br>Intervention Behavior Plan — Yes [ ]<br>Copies of current class work and homework assignments: — Yes [X]<br>Medical Reports: — Yes [ ] No [ ]<br>Clinical Reports: — Yes [ ] No [ ]<br>Psychiatric Reports: — Yes [ ] No [ ]<br>Medications: — Yes [ ] No [X]<br>Attendance Record — Yes [X]<br>Copies of most recent evaluation(s) — Yes [X] |

**[Add]**

| 4. Results of all interventions: (TAT, MDT, etc and attach meeting notes.) | 5. Resources needed for program implementation |
|---|---|
| Parent/Teacher Conference | none |

**[Add]**

---

## 6. CURRENT SETTING CONSIDERATIONS

| ROW | SETTING in neighborhood school (Determined through the IEP team.) | SERVICE PROVIDER (Based on documented need) | LEVEL OF SERVICE (Based on documented need) |
|---|---|---|---|
| 1 | [ ] in general education classroom setting | [ ] general educators with consultation from special education staff | [ ] between 0% and 20% of service time |
| 2 | [X] combination general education and resource classroom | [X] combination of general educators, special educators and related service providers | [X] between 21 % and 60% of service time |
| 3 | [ ] *out of general education classroom | [ ] special educators and related service providers | [ ] between 61 % and 100% of service time |

*In providing or arranging for the provision of nonacademic and extracurricular service and activities, including meals, recess period, and the services and activities, each public agency shall ensure that each child with a disability participates with non-disabled children in those services and activities (300.306) to the maximum extent appropriate to the needs of that child. (300.553) Nonacademic settings.

### Check the level of need as indicated:
### DIRECTIONS:

| If two or three boxes are checked in the Row 1, check LOW.<br>If two or three boxes are checked in the Row 2, check MODERATE.<br>If two or three boxes are checked in the Row 3, check HIGH. | If one box is checked in each row,<br>check either MODERATE or HIGH,<br>depending on the need of the student. |
|---|---|

## 7. LEVEL OF NEED

| [ ] LOW | [X] MODERATE | [ ] HIGH |
|---|---|---|

07-02-2001                                    Attention: Technical Support Supervisor, Compliance Team

# Exhibit F

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

## Multidisciplinary Team
## (MDT)
## MEETING NOTES

Annual IEP Review **Meeting Notes**

STUDENT: Ameir          Jeffries          SCHOOL: Kimball Elementary          DATE: 1/3/2007

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Phyllis Jones | *[signature]* | Parent/Guardian |
| S. Thomashow | *[signature]* | Special Ed |
| R. Brummell | *[signature]* | General Ed Teacher |
| R. Rabb | *[signature]* | LEA Representative |
| R. Rabb | *[signature]* | Principal or Designee |
| | | Student |
| Ms. Byrnes | *[signature]*, LGSW | Social Worker |
| PHYLLIS JONES | *[signature]* | |

**Introduction:**
The meeting convened and all disciplined specialist introduced themselves to the parent. A procedural safegard manual was issued and explaination of parent rights was given. The purpose of the meeting was stated: To review Ameir's IEP annually and revise it accordingly.

**The Parent report:**

Mr. Jones reports that Ameir has made progress. He feel he needs help in reading and spelling. If he can get those concepts he will progress further. The parent will discuss wheather or not they should transfer school.

**The General Ed. Teacher:**
Mrs. Brummell: The class is run as a discussion-based setting. Any written work is usually picture based with Ameir. Ameir enjoys the science activities more than social studies. The problem is Ameir's attendance in school. If he misses ten days, he makes several steps back. When he comes late, he is often confused. He needs to be punctual to give him more structure.

**The Special Education Teacher:**
Ameir has progressed since last year. His behavior is always a model for the other students. Ameir enjoys math and is doing well with multiplication facts. He still needs reminders about regrouping with subtraction. Ameir is working on developing decoding skills, but needs a lot of prompting to sound out simple words. Ameir is using the DISTAR reading program to do intensive reading lessons that encourage decoding using sounds. Ameir is able to verbally articulate his thoughts, but has difficulty putting these words on paper. The letters that he writes on paper do not correspond well to the words that he is saying. Ameir needs constant reinforcement of basic skills. The problem we are seeing in his progress is a result of Ameir's constant absenteeism. Ameir needs to attend school everyday.

The Parent ☑ is present ☐ is not present at the meeting.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS          04-05-2004          DIVISION OF SPECIAL EDUCATION          MEETING NOTES

*Rh*

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

**MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES (continuation)**

| MDT |
| --- |

STUDENT: _____ Ameir  Jeffries _____   SCHOOL: Kimball Elementary _____   DATE: 01/03/2007

IEP Meeting Notes:
Based on the documentation of the MDT Ameir continues to be eligible for special education services as a learning disabled student.

Specialized instruction is required in the following area: reading, math, and  written expression.
The total number of hours required are 15 hours.

Related services are required in psychological counseling for 30minutes per week.

The following accommodations/modifications will be made: extended time, small group, and read test and directions to the student.

Placement discussion: The IEP can be implemented at the neighborhood school: Kimball ES

Comp.Ed. services are not warrented at this time.

Recommendations: The MDT recommends Ameir should transfer to a closer school so that he can improve his attendance.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS    07-02-2001    DIVISION OF SPECIAL EDUCATION    MDT MEETING NOTES    APPENDIX - A

# Exhibit G

PRINCE WILLIAM COUNTY PUBLIC SCHOOLS
DEPARTMENT OF SPECIAL EDUCATION
P.0. BOX 389
MANASSAS, VA 20108

CONFIDENTIAL REPORT OF EDUCATIONAL ASSESSMENT-FOR PROFESSIONAL USE ONLY
This report is to be placed in a confidential file and is to be released only in compliance with the policies and
procedures approved by the Prince William County School Board.

| | | | |
|---|---|---|---|
| **Name** | **Ameir Jeffries** | **Examiner** | **Kim Cummings** |
| **School** | **Triangle ES** | **Grade** | **4** |
| **Birth Date** | **08/05/1997** | **Exam Date** | **11/08//2007** |

## REASON FOR REFERRAL/ BACKGROUND INFORMATION

Ameir is a 10 year 3 month old 4th grade student at Triangle Elementary. Ameir is a transfer student form the District of Columbia with an active IEP for a student with a specific learning disability. A records review indicates that all previous assessments pertaining to his eligibility for special education are not available and an early reevaluation was initiated to gather additional information to determine whether his current categorical disability and educational placement continue to be appropriate. One component of this evaluation is an educational assessment to assist with determining if there is an adverse effect on educational performance.

Current IEP minutes report that Ameir is reading on a primer level. His decoding skills are weak and he has poor fluency when reading aloud. Ameir demonstrates satisfactory comprehension when material is read aloud to him. In writing he is able to generate ideas but has difficulty with spelling and mechanics. He is currently performing on grade level in math. His work habits are very good and he tries very hard in class.

## BEHAVIORAL OBSERVATIONS

Ameir accompanied the examiner to the testing room and engaged in conversation. He appeared to be comfortable with the examiner and rapport was easily established. He stated that he liked his present school better than his school in D.C. He said he likes all subjects except reading because he doesn't like to do all the writing. He shared that in his free time he likes to play basketball and football. Ameir was attentive to directions and put forth good effort on all tasks presented.

## TESTS ADMINISTERED

In order to obtain a measure of Ameir's current level of academic functioning, selected tests from the Woodcock-Johnson III Normative Update Tests of Achievement, Form A, (WJIII NU) were administered. This test is composed of two batteries: the Standard Battery and the Extended Battery.

Performance on individual tests within these batteries has been combined to produce cluster scores that indicate Ameir's achievement level in certain broad academic areas. Scores are presented in the form of age-based Standard Scores. A summary of scores is attached to this report. Ameir's performance is discussed below.

## DISCUSSION OF RESULTS

### READING CLUSTERS

To assess the current level of functioning in the area of reading, Ameir was administered the **Letter-Word Identification**, **Word Attack**, **Reading Fluency,** and **Passage Comprehension** tests of the WJIII NU.

The **Basic Reading Skills Cluster** measures the student's ability to read individual words. It is a combination of skill in identifying isolated letters and words **Letter-Word Identification**, as well as the ability to apply phonic and structural analysis skills when reading nonsense words **Word Attack**. Ameir's achievement for **Basic Reading Skills (SS60)** was in the **very low range** for his age. On Letter-Word Identification (SS56)**,** Ameir demonstrated limited knowledge for basic sight words. He was only able to read a few two-three letter words. He misread some words as visually similar words but did not attempt to read words he perceived as difficult. On Word Attack (SS72), Ameir was able to match isolated letters to sounds but did not demonstrate adequate sound blending skills. He generally identified initial consonant letters but confused medial vowels and ending consonants.

The **Passage Comprehension Test** measures the ability to match rebus pictures to an actual picture, match short phrases to a picture and supply missing words missing from short passages. Ameir's achievement for **Passage Comprehension (SS61)** was in the **very low range** for his age. He read passages silently and was able to complete one-sentence passages with picture clues. He was not able to successfully complete sentences without accompanying pictures and would refer to other pictures on the page to attempt to complete the passage.

The **Broad Reading Cluster** provides a comprehensive measure of the student's overall reading achievement, including decoding, speed and the ability to comprehend while reading. This cluster is composed of three tests: **Letter-Word Identification (discussed above)**, **Reading Fluency,** which measures reading speed and **Passage Comprehension (discussed above)**. In **Reading Fluency** (SS57), Ameir did not demonstrate satisfactory ability to read and comprehend simple sentences indicating limited basic sight word knowledge. He correctly responded to 60% of the statements read. Ameir's achievement for **Broad Reading (SS49)** was in the **very low range** for his age.

## MATHEMATICS CLUSTERS

To assess Ameir's functioning in the area of mathematics, the **Calculation**, **Applied Problems**, and **Math Fluency** tests of the WJIII NU were administered.

The **Math Calculation Skills Cluster** assesses mastery of computational skill (**Calculation**) and speed and accuracy with basic math facts (**Math Fluency**).   Ameir's achievement in **Math Calculation Skills (SS68)** was in the **very low range** for Ameir's age. On Calculation (SS67), Ameir was able to perform calculations for basic addition and subtraction facts for single digit numbers under twenty. He did not add or subtract multiple digit numbers correctly with or without regrouping. He did not demonstrate knowledge for basic multiplication or division facts. He did not attempt any problems with simple fractions. He did not know his facts automatically and counted on his fingers and in his head.  On Math Fluency (SS87), Ameir did not work quickly as he did not know many facts automatically.  He was accurate for all items attempted.

The **Applied Problems Test** is a measure of math readiness skills including the ability to count with one to one correspondence and to analyze and solve practical mathematical problems. For **Applied Problems** (SS87) Ameir was able to solve one-step addition, subtraction, multiplication and division fact story problems for single digit numbers that were orally presented. He was able to read the temperature from a thermometer and tell time to the hour on an analog clock.  He was not able to identify all the coins but could add sets of varying coins up to fifty cents and indicate the correct change needed to make a purchase. Difficulty was noted with solving problems that required multiple steps.

The **Broad Mathematics Cluster** furnishes a comprehensive measure of math achievement, including problem solving, number facility, speed, and reasoning.  This cluster is derived from performance on three tests, one that measures skill in mathematical computation (**Calculation**), and a second that assesses the ability to analyze and solve practical mathematical problems (**Applied Problems**) and a third (**Math Fluency**) that measures speed and accuracy.  Ameir's achievement for **Broad Mathematics (SS77)** was in the **low range** for his age.  His performance on these tests is discussed above.

## WRITTEN LANGUAGE CLUSTERS

To assess the student's level of functioning in the area of written language, Ameir was administered the **Spelling, Writing Samples and Writing Fluency,** tests of the WJIII NU.  Performance on these tests yields two clusters, which are described below.

The **Broad Written Language Cluster** provides an overall measure of written language achievement.  It is a combination of three tests: **Spelling** that measures the ability to provide written responses to a number of questions that require knowledge of alphabet letters and spelling, **Writing Samples** that assesses skill in furnishing written responses to a variety of demands such as filling in blanks in sentences, providing sentences that describe a given picture, and producing a missing middle sentence for a given paragraph and **Writing Fluency**, which involves formulating and writing simple sentences quickly. Ameir's achievement for **Broad Written Language (SS45)** was

in the **very low range** for his age. On Spelling (SS58), Ameir was able to write dictated letters and six, 2-3 letter sight words. He attempted to spell many words and was generally able to provide the correct initial and final consonant letter but confused vowel sounds. On Writing Samples (SS54) Ameir was not able to develop a readable simple sentence. Most of his words were a string of letters that did not indicate any knowledge of basic letter patterns. He was able to complete sentence stems with one and two word responses with some spelling errors. On Writing Fluency (SS56), Ameir had a difficult time organizing the provided words into sentences. He omitted words, word endings and placed words out of order.

The **Written Expression Cluster** assesses the student's written expression skills. It is a combination of the ability to write responses to a variety of demands (**Writing Samples**) as well as skill in formulating and writing simple sentences quickly (**Writing Fluency**). Ameir's achievement for **Written Expression (SS48)** was in the **very low range** for the student's age. These tests are discussed above.


## SUMMARY

Ameir is a 10 year 3 month old 4th grade student at Triangle Elementary who is currently undergoing a full evaluation to assist in determining his need for special education services. This assessment is one component of that evaluation.

This assessment shows Ameir's academic achievement in **reading** to be in the **very low range**. Ameir demonstrated limited skills in word recognition, decoding skills and comprehension skills. He was not able to read basic sight words and showed limited knowledge for basic letter patterns and had difficulty decoding regular patterned words. His comprehension of text was best supported by pictures. His achievement in **writing** was in the **very low range** for his age. In writing he was not able to produce a readable simple sentence to express his ideas. He demonstrated a limited writing vocabulary and demonstrated limited knowledge for basic spelling patterns. He also had a difficult time developing sentences when provided with a word bank. In **math**, he performed in the **very low to low range**. He was able to add and subtract single digit numbers under twenty. He was not able to do calculations for multiple digit numbers. He did not demonstrate knowledge for basic multiplication or division facts. He did not know many of his facts automatically. He was able to solve one-step story problems for single digit numbers with limited content.


## RECOMMENDATION
The following recommendations reflect information obtained through his assessment only. They do not reflect what may or may not have been previously attempted.
Ameir may benefit from:
1.  direct instruction in phonics.
2.  daily reading and writing activities with high frequency sight words to increase fluency with reading and spelling (dictation, spelling games, magnetic letters).
3.  developmental spelling program that would build upon the various spelling features to aid with word decoding and encoding.

4. use of a word bank when writing to provide grade level vocabulary.
5. reminders to edit his written work for correct sentence structure, word order and spelling.
6. practice identifying key words in multi step word problems and setting up numerical algorithms to go with the problems.
7. daily drill and practice with basic math facts.
8. small group instruction to review and practice basic calculations in addition, subtraction, multiplication and division.

These assessment results will be presented to the Eligibility Committee to assist in determining if Ameir requires special education services.

_Kim Cummings_

**Kim Cummings, M.S.**
**Educational Diagnostician**
**Prince William County Public Schools**
_12/5/2007_
**Date**

**Ameir Jeffries**
## SUMMARY OF SCORES
**WOODCOCK-JOHNSON III NORMATIVE UPDATE TEST OF ACHIEVEMENT, FORM A**
**DATE: 11/08/2007**

| | %ile Rank | Age SS | Classification |
|---|---|---|---|
| | | | |
| **BROAD READING CLUSTER** | <0.1 | 49 | Very Low |
| **BASIC READING SKILLS** | 0.4 | 60 | Very Low |
| Letter-Word Identification | 0.2 | 56 | Very Low |
| Passage Comprehension | 0.4 | 61 | Very Low |
| Reading Fluency | 0.2 | 57 | Very Low |
| Word Attack | 3 | 72 | Low |
| | | | |
| **BROAD MATHEMATICS CLUSTER** | 6 | 77 | Low |
| **MATHEMATICS CALCULATION CLUSTER** | 2 | 68 | Very Low |
| Calculation | 1 | 67 | Very Low |
| Math Fluency | 19 | 87 | Low Average |
| Applied Problems | 19 | 87 | Low Average |
| | | | |
| **BROAD WRITTEN LANGUAGE** | <0.1 | 45 | Very Low |
| **WRITTEN EXPRESSION CLUSTER** | <0.1 | 48 | Very Low |
| Spelling | 0.3 | 58 | Very Low |
| Writing Fluency | 0.2 | 56 | Very Low |
| Writing Samples | 0.1 | 54 | Very Low |
| | | | |

**STANDARD SCORES (SS)**

| | |
|---|---|
| 131 and above | Very Superior range |
| 121 to 130 | Superior range |
| 111 to 120 | High Average range |
| 90 to 110 | Average range |
| 80 to 89 | Low Average range |
| 70 to 79 | Low range |
| <69 | Very Low range |

# Exhibit H



# PRINCE WILLIAM COUNTY PUBLIC SCHOOLS-SPECIAL EDUCATION DEPARTMENT
## P.O. Box 389, Manassas, Virginia, 22110

### ASSESSMENT REPORT UPDATE*

Student: Ameir Jeffries                                        Birthdate: 8/5/97
School: Triangle Elementary School                            Grade: 4th

### TYPE OF REPORT TO BE UPDATED

___X_ Social History    _____Educational         _____Psychological
_____Other

### SOURCE OF INFORMATION TO BE UPDATED

Author: N/A                              Date:

Agency:

### PROCEDURE FOR UPDATE

_____Observation        _____Testing             _____Conference
Record Review        __X__Other


*Description/Date(s)* Mother and school social worker scheduled a parent interview during the month of November of 2007, mother rescheduled on two occasions. Unfortunately the interview was not conducted. This worker informally obtained the information in this report, during a Child Study meeting at the time of sign-off for Ameir's three-year reevaluation review.

### REASON FOR REFERRAL:

Ameir Jeffries is a ten-year-old fourth grade transfer student from the District of Columbia Public Schools. He currently receives special education services as a student with a specific learning disability in the areas of reading, writing, and math. Ameir transferred to Triangle Elementary in March of 2007 with an active Individualized Educational Plan (IEP). This is his three-year reevaluation to determine if he continues to require services. Previous school records were incomplete, as all formal assessments were not available for review. Therefore the committee has determined to complete a full reevaluation to determine how to appropriate accommodate Ameir's academic needs in the classroom.

At the time of sign-off, Mrs. Jeffries expressed concerns that Ameir is performing significantly below the level of his peers in all academic areas. She feels that DC public

Ameir Jeffries
8/5/97
Page 2

school's lack of follow through with getting the special education process started when Ameir was much younger, has had an impact on his educational development. She also reported that he sat out of school for an entire year, without receiving any type of educational services, as a result of a car accident.

At the time of sign-off, Mrs. Jeffries reported that she had cancer two years ago and had to undergo chemotherapy treatment. Her cancer was in remission during that time and she was in good health. Mrs. Jeffries talked about other significant stressors that her family experienced prior to their transition to Virginia in addition to her suffering from cancer, which all may have also had an impact on Ameir's educational performance.

According to the classroom teacher, Mrs. Jeffries is currently undergoing cancer treatments again and Ameir has missed a lot of school and is often tardy. He is also still involved with physical therapy for his leg, which may also explain his lack of school attendance.

Academically, Ameir is reading on a kindergarten level. The special education teacher reported that Ameir often participates in class, however he exhibits a lot of tasks avoidance behaviors. Social Studies is challenging for Ameir due to the higher level content. When information is orally presented to him, he is able to understand and produce the work.

**MEDICAL HISTORY/UPDATE:**

According to Mrs. Jeffries, Ameir broke his leg resulting an accident while he was in first grade. He was thrown from a tractor-trailer and was out of school for a whole year. Ameir still receives physical therapy as a result of that accident. Otherwise mother did not mention any additional medical concerns that could impact his academic performance.

**RECOMMENDATION:**

It is recommended that all assessments be reviewed to determine if Ameir Jeffries qualifies for special education services.

Celeste M. Sharper, MSW
School Social Worker
Department of Student Services
**PRINCE WILLIAM COUNTY SCHOOLS**

Date  1/10/08

# Exhibit I

**PRINCE WILLIAM COUNTY PUBLIC SCHOOLS**
**P. O. Box 389**
**Manassas, VA 20108**

## CONFIDENTIAL REPORT OF PSYCHOLOGICAL EVALUATION FOR PROFESSIONAL USE ONLY

This report is to be placed in a confidential file and is to be released only in compliance with policies and procedures of Prince William County School Board. Further discussion of this student can be arranged by contacting the School Psychologist.

**Examinee: Ameir Jeffries**
**Date of Birth: August 5, 1997**
**Examiner: Mia Newell Valentine, M.Ed**
**Dates of Examination: November 30 2007 & January 10, 2008**
**Chronological Age: 10 years 3 months**
**School: Triangle Elementary**
**Teacher/Grade: Mr. Sauter/4th grade**

### Reason for Referral:
Ameir was referred for a psychological evaluation as one component of reevaluation to determine if he continues to qualify for special education services.

### Sources of Data:
Wechsler Intelligence Scale for Children Fourth Edition (WISC-IV)
Wide Range Assessment of Memory and Learning Second Edition (WRAML-2)-select subtests
The Berry-Buktenica Developmental Test of Visual-Motor Integration Fifth Edition (VMI-V)
Kinetic School Drawing (KSD)
Records Review

### Background Information:
Ameir is a 10 year 3 month-old student in the fourth grade at Triangle Elementary. He's a transfer student from District of Columbia with an Individualized Education Plan as a student with a Specific Learning Disability. It should be noted that there are limited special education records. For further information, the reader should refer to the social history (Sharper, 2008)

### Behavioral Observations:
Ameir was assessed on two different occasions. Rapport was easily established due to his friendly personality and he readily engaged in conversation with the examiner. During the assessment, he was cooperative, attentive, and demonstrated effort on most tasks presented to him. Ameir completed all assessment tasks and results are deemed reliable and valid.

**Current Assessment Results**

**Wechsler Intelligence Scale for Children Fourth Edition (WISC-IV)**

| Scale | Composite Score** | Percentile Rank | 95%   Confidence Interval |
|---|---|---|---|
| Verbal Comprehension | 87 | 19 | 81-95 |
| Perceptual Reasoning | 79 | 8 | 73-88 |
| Working Memory | 83 | 13 | 77-92 |
| Processing Speed | 94 | 34 | 86-104 |
| Full Scale | 81 | 10 | 77-87 |

**These scores are Standard Scores; Average Standard Scores are 90-109 with a mean of 100.*

Ameir was administered the WISC-IV in order to obtain an estimate of his current level of intellectual functioning. His overall performance is classified in the low average range with varying skills. Ameir's verbal comprehension and working memory skill are in the low average range. His perceptual reasoning skills are in the low average range and his processing speed skills are in the average range. For special education eligibility purposes, the committee should use the upper limits of his Full Scale IQ ( range 77-87) as the best representation of his cognitive ability.

Within the Verbal Comprehension Composite, Ameir's skills ranged from below average to average. His strongest skill was ability to answer social questions; however his ability to orally express meanings of words and state relationships among objects and concepts is less developed. It's important to mention that at time he used inappropriate grammar when speaking although he presents with the ability to correct his errors when speking.

For the Perceptual Reasoning Composite, Ameir's visual spatial and categorical reasoning skills fell below the average range. He had significant difficulty replicating designs using three dimensional blocks and his ability to identify pictures with common similarities was another weak area for him. A strength for Ameir among his nonverbal skills was his ability to complete a matrix, which requires strong visual information processing and abstract reasoning skills.

His short-term auditory memory skills are in the low average range. The Working Memory Composite assesses an individual's ability to retain auditory information in memory and also perform mental operations.

Ameir demonstrated average ability for the Processing Speed Composite. It should be noted that his visual-motor skills are significantly less developed in comparison to his visual-discrimination skills. More specifically, Ameir scored in the below average range on a task that required him to copy symbols that are paired with numbers and this task

requires visual-motor coordination and visual memory. On another visual processing speed task, Ameir scored in the upper average range for a task that assesses his ability to match symbols under timed conditions.

**Additional Cognitive Processing Assessment Results:**

Ameri was administered the Visual Index of the WRAML-2 in order to assess his memory of pictorial information or complex designs. He presents with weak visual memory skills as his score is well below average with a standard score of 79 (8th percentile). He had difficulty reproducing designs from memory although he was able to recall elements in a picture that had been moved, changed or deleted with an low average performance.

Ameir was also administered the VMI-V in order to assess his visual-motor integration skills, which requires a student to copy a series of geometric designs increasing in difficulty. He earned a standard score of 79 (8th percentile) which is in the borderline for his age. Weak visual-motor integration skills can impact your handwriting skills or the ability to transfer information such as copying from a chalkboard or completing a scantron that's used for assessments.

In addition to the visual processing measures, Ameir was administered an informal test to gain an understanding of his phonological processing skills. The measure required him segment the sounds in a word. It was extremely difficult for him to hear and identify all the sounds in the word. Phonological skills are necessary when decoding unfamiliar words.

**Social-Emotional Functioning**

Ameir completed the Kinetic School Drawing. He drew himself in an academic situation, which indicates that he likely perceives school as a positive situation. Ameir displayed age appropriate social skills throughout the assessment. He presents as a well adjusted child. At this time there are no indicators of any social-emotional difficulties that would negatively impact his ability to learn.

**Summary/Conclusions:**

Ameir is a 10 year 3 month-old student in the fourth grade at Triangle Elementary. He was referred for a psychological evaluation as one component of a reevaluation to determine a need for special education services. A current assessment reveals cognitive ability in the low average range and the special education eligibility committee should use the upper limits of his Full Scale (i.e., 87) as the best representation of his ability. He presents with visual-memory and visual integration processing deficits. Ameir appears to be well adjusted to his school environment and there are no emotional concerns that would interfere with his ability to learn.

4                                              **Ameir Jeffries (08/05/97)**
                                               **Psychological Evaluation**
                                                        **(Confidential)**

The eligibility committee will need to meet and review these results in conjunction with other assessment components to make the best determinations for Ameir's academic needs.

Mia Newell Valentine, M.Ed.
School Psychologist
PRINCE WILLIAM COUNTY SCHOOLS

# Exhibit J

**Educational Report**
**Teacher Narrative**
**Ameir Jeffries**
**January 9, 2008**

Ameir transferred to Triangle Elementary in March of 2007 from Washington, D.C. Public Schools as a student with a Specific Learning Disability. A full evaluation was recommended in October of 2007 due to incomplete records. Ameir has been receiving Special Education Services in an Inclusive Environment since his transfer.

Ameir has had a total of 14 absences and 17 tardies this school year. Several of the absences and tardies are attributed to Physical Therapy and surgery due to an injury that he incurred when he was younger. Unfortunately, these absences and tardies have had a negative impact on his receipt of instruction.

Ameir's current instructional level in Language Arts is at a mid first grade level. He is currently reading at a primer level on the QRI. He recognizes all letters and corresponding sounds and is in the letter name stage on a Developmental Spelling Inventory. He is able to read simple decodable words when prompted. He is able to recognize initial sounds, but has difficulty with medial sounds and some ending sounds unless prompted to read the word through. He often guesses at a word after looking at the first letter. He also has difficulty with consonant blends, particularly "sh". Ameir currently receives reading of text accommodations which allows him to be exposed to grade level material. He demonstrates comprehension and understanding of material that is presented to him orally and makes connections to life experiences.

In the area of Written Language, Ameir is able to verbally articulate thoughts and ideas and follow the proper sequence when telling a story. He has a beginning, middle and ending with supporting details when he verbally presents his work. However, he has difficulty putting the story on paper due to his difficulty with spelling. He is able to write simple sentences if he has a word list / bank to use. He is also able to copy from a model, and copies instructional notes when they are provided.

In the area of Math, Ameir is able to add two digit numbers but requires prompts to remember to "carry" from the ones. He is able to verbalize the process, but does not always place the number in the correct column when he "carries" it. He also has difficulty with subtracting with borrowing. He is able to demonstrate the concept of multiplication, but does not have the basic facts memorized. He shows an understanding of the concept of division as well, but has difficulty with completing the steps involved in long division. Ameir shows knowledge of patterns and measurement.

Ameir does not appear to have any vision, hearing or motor problems. His mother indicates that his leg was injured in an accident when he was much younger and has had several surgeries and physical therapy to repair the injury.

**Teacher Narrative**
**Ameir Jeffries**
**January 9, 2008**
**Page 2**

Ameir actively participates in class discussions and works well in groups.  He receives support from a peer buddy that partner reads with him.  He tries his best to complete his work and asks for assistance when needed.  He exhibits good organizational skills and work habits.  One area of concern that I have noted is frequent requests to go the bathroom, or to get water, or to sharpen his pencil, etc.  These behaviors are often exhibited when written work is assigned.

Ameir has positive relationships with his peers as well as adults.  He is courteous and respectful and very amicable.

Accommodations and modifications that Ameir currently receives include tests read aloud, text material read aloud, and a modified curriculum in reading and written language.

Heidi Milgrim
Special Education Teacher

Aaron Sauter
Regular Education Teacher

# Exhibit K

# JAMES E. BROWN & ASSOCIATES, PLLC
### *A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Roxanne D. Neloms |
| Domiento C.R. Hill | 1220 L Street, NW | Kimberly Glassman |
| Roberta Gambale | Suite 700 | Seth Diamond |
| Christopher L. West | Washington, DC 20005 | Maria Blaeuer |
| John A. Straus | Telephone: (202) 742-2000 | Talib Abdus-Shahid |
| Juan J. Fernandez!+ | Facsimile: (202) 742-2098 | Amee Vanderpool |
| Tilman L. Gerald | e-mail: Admin@Jeblaw.biz | Nicole Mackin |
| ------------------------------------ | | ---------------------------------- |
| | | ! DC Bar Special Legal Consultant |
| | | + Admitted in Bolivia |

March 28, 2008

**Via Facsimile**
Katie Jones, Principal
Winston Educational Center
3100 Erie Street, SE
Washington, D.C. 20020

**Re: Request MDT Meeting for Ameir Jeffries, DOB: 8-05-97**

Dear Ms. Jones:

This letter is to request that an MDT meeting be scheduled as soon as possible on behalf of my client Ms. Phyllis Jones, parent of the above-mentioned student. This meeting is needed to review evaluations, develop IEP, and determine appropriate placement for Ameir.

Please send us a letter of invitation with three dates and times in writing as to when your team can meet. 1 will review those dates with the parent and let you know when we would like to have the meeting. Documents pertaining to this student may be faxed to (202) 742-2098 or (202) 742-2099.

If you have any question please contact me at (202) 742-2013.  Thank you for your attention, we look forward to hearing from you.

Sincerely,

Nicole E. Mackin, Esq.

Cc: Office of the Attorney General – DCPS
   Phyllis Harris, DCPS Office of Special Education
   Phyllis Jones, Parent
   File

```
*********************
***   TX REPORT   ***
*********************


TRANSMISSION OK

TX/RX NO           3857
CONNECTION TEL                  96455941
CONNECTION ID
ST. TIME           03/28 15:00
USAGE T            00'23
PGS. SENT          2
RESULT             OK
```

# JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Roxanne D. Neloms |
| Domiento C.R. Hill | 1220 L Street, NW | Kimberly Glassman |
| Roberta Gambale | Suite 700 | Seth Diamond |
| Christopher L. West | Washington, DC 20005 | Maria Blaeuer |
| John A. Straus | Telephone: (202) 742-2000 | Talib Abdus-Shahid |
| Juan J. Fernandez!+ | Facsimile: (202) 742-2098 | Amee Vanderpool |
| Tilman L. Gerald | e-mail: Admin@Jeblaw.biz | Nicole Mackin |
---------------------------

! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# *FAX COVER SHEET*

DATE:       March 28, 2008

TO:         Katie Jones, Principal
            Winston Educational Center

PHONE:      (202) 645-3300

FAX NO:     (202) 645-5941

FROM:       Heidi Romero, Legal Assistant for Nicole E. Mackin, Esq.

SUBJECT:    Request MDT Meeting for Ameir Jefferies


NUMBER OF PAGES INCLUDING COVER SHEET: 2

```
**********************
***   TX REPORT   ***
**********************


TRANSMISSION OK

TX/RX NO            3870
CONNECTION TEL                      94425518
CONNECTION ID
ST. TIME           03/28 15:40
USAGE T            00'21
PGS. SENT          2
RESULT             OK
```

# JAMES E. BROWN & ASSOCIATES, PLLC
### *A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Roxanne D. Neloms |
| Domiento C.R. Hill | 1220 L Street, NW | Kimberly Glassman |
| Roberta Gambale | Suite 700 | Seth Diamond |
| Christopher L. West | Washington, DC 20005 | Maria Blaeuer |
| John A. Straus | Telephone: (202) 742-2000 | Talib Abdus-Shahid |
| Juan J. Fernandez!+ | Facsimile: (202) 742-2098 | Amee Vanderpool |
| Tilman L. Gerald | e-mail: Admin@Jeblaw.biz | Nicole Mackin |

! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# *FAX COVER SHEET*

DATE:        March 28, 2008

TO:          Phyllis Harris, Executive Director
             Office of Special Education

FROM:        Heidi Romero, Legal Assistant for Nicole E. Mackin, Esq.

FAX NO:      (202) 442-5518/5517

SUBJECT:     Request MDT Meeting for Ameir Jefferies


NUMBER OF PAGES INCLUDING COVER SHEET: **2**

COMMENTS:

```
***************************
***   ERROR TX REPORT   ***
***************************

TX FUNCTION WAS NOT COMPLETED

TX/RX NO              3858
CONNECTION TEL                    94425518
CONNECTION ID
ST. TIME             03/28 15:13
USAGE T              00'00
PGS. SENT            0
RESULT               NG        #0018 BUSY/NO SIGNAL
```

## JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Roxanne D. Neloms |
| Domiento C.R. Hill | 1220 L Street, NW | Kimberly Glassman |
| Roberta Gambale | Suite 700 | Seth Diamond |
| Christopher L. West | Washington, DC 20005 | Maria Blaeuer |
| John A. Straus | Telephone: (202) 742-2000 | Talib Abdus-Shahid |
| Juan J. Fernandez!+ | Facsimile: (202) 742-2098 | Amee Vanderpool |
| Tilman L. Gerald | e-mail: Admin@Jeblaw.biz | Nicole Mackin |

---

! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# *FAX COVER SHEET*

DATE:       March 28, 2008

TO:         Phyllis Harris, Executive Director
            Office of Special Education

FROM:       Heidi Romero, Legal Assistant for Nicole E. Mackin, Esq.

FAX NO:     (202) 442-5518/5517 ·

SUBJECT:    Request MDT Meeting for Ameir Jefferies


NUMBER OF PAGES INCLUDING COVER SHEET: **2**

COMMENTS:

```
                    ********************
                    ***  TX REPORT  ***
                    ********************

    TRANSMISSION OK

    TX/RX NO            3859
    CONNECTION TEL                  94425098
    CONNECTION ID
    ST. TIME           03/28 15:02
    USAGE T            00'23
    PGS. SENT          2
    RESULT             OK
```

# JAMES E. BROWN & ASSOCIATES, PLLC
### *A Professional Limited Liability Company*

| James E. Brown | Attorneys at Law | Roxanne D. Neloms |
| Domiento C.R. Hill | 1220 L Street, NW | Kimberly Glassman |
| Roberta Gambale | Suite 700 | Seth Diamond |
| Christopher L. West | Washington, DC 20005 | Maria Blaeuer |
| John A. Straus | Telephone: (202) 742-2000 | Talib Abdus-Shahid |
| Juan J. Fernandez!+ | Facsimile: (202) 742-2098 | Amee Vanderpool |
| Tilman L. Gerald | e-mail: Admin@Jeblaw.biz | Nicole Mackin |

! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# *FAX COVER SHEET*

DATE:       March 28, 2008

TO:         Office of General Counsel
            District of Columbia Public Schools

FROM:       Heidi Romero, Legal Assistant for Nicole E. Mackin, Esq.

FAX NO:     (202) 442-5098/5097

SUBJECT:    Request MDT Meeting for Ameir Jefferies


NUMBER OF PAGES INCLUDING COVER SHEET: **2**

COMMENTS: